Electronically Filed - St Louis County - January 03, 2017 - 04:31 PM

**17SL-CC00078**

IN THE CIRCUIT COURT OF ST. LOUIS COUNTY
TWENTY-FIRST JUDICIAL CIRCUIT
STATE OF MISSOURI

| | |
|---|---|
| **MARIANIST PROVINCE OF THE UNITED STATES** )<br><br>and )<br><br>**ST. JOHN VIANNEY HIGH SCHOOL, INC.** )<br><br>Plaintiffs/Relators, )<br><br>v. )<br><br>**CITY OF KIRKWOOD,** )<br>Serve: *Hold Service* )<br>*For Entry of Appearance* )<br><br>Defendant, )<br><br>and )<br><br>**BOARD OF ADJUSTMENT OF THE CITY OF KIRKWOOD** )<br>Serve: *Hold Service* )<br>*For Entry of Appearance* )<br><br>Respondents. ) | Cause No.<br><br>Division<br><br><br>JURY TRIAL DEMANDED |

## VERIFIED PETITION

COME NOW Plaintiffs/Relators Marianist Province of the United States (*"**Marianist Province**"*), and St. John Vianney High School, Inc. (*"**Vianney HS**"*) (sometimes collectively referred to hereinafter as *"**Vianney**"*), by and through undersigned counsel, and for its Verified Petition against Defendant City of Kirkwood, Missouri (the *"**City**"*), and Respondent Board of Adjustment of the City of Kirkwood (the *"**Board of Adjustment**"*), states to this Honorable Court as follows:

### ALLEGATIONS COMMON TO ALL COUNTS

#### Parties

1.      At all relevant times herein, Marianist Province was and is a nonprofit corporation in good standing, duly organized and existing pursuant to the laws of the State of Missouri, having its principal

1

Exhibit A

Electronically Filed - St Louis County - January 03, 2017 - 04:31 PM

place of business in St. Louis County, Missouri.

2.      At all relevant times herein, Vianney HS was and is a nonprofit corporation in good standing, duly organized and existing pursuant to the laws of the State of Missouri, having its principal place of business in St. Louis County, Missouri.

3.      At all relevant times herein, the City was and is a municipal corporation of the State of Missouri, having its principal place of business in St. Louis County, Missouri, and has framed and adopted a charter pursuant to the Missouri Constitution.

4.      At all relevant times herein, the Board of Adjustment was and is an administrative board of the City established and existing pursuant to the ordinances of the City and the statutes of the State of Missouri.

<u>**Venue and Jurisdiction**</u>

5.      The Board of Adjustment is empowered by the City's ordinances and applicable State law to hear and decide all matters referred to it or upon which it is required to pass under the City's zoning ordinance, including, without limitation, the authority to grant area or non-use variances which vary or modify the application of any of the regulations or provisions thereunder.

6.      This is an action against the City challenging the Board of Adjustment's denial of Vianney's variance request as arbitrary, capricious, unreasonable, invalid, illegal, ineffective, null and void, unconstitutional, ultra vires, and not supported by competent and substantial evidence and for violations of various state and federal statutes restricting Vianney's ability to use its property.

7.      Venue is proper in this judicial district because Vianney, the City and the Board of Adjustment are located in St. Louis County, Missouri pursuant to section 508.050, R.S.Mo.

8.      The Court has subject matter jurisdiction over the claims in this Verified Petition, pursuant to sections 536.100–536.150, 89.110 and 1.302, R.S.Mo., Article I, § 26 of the Missouri State Constitution, and 42 USC § 2000cc.

9.      Less than thirty (30) days have elapsed since the City, through the Board of Adjustment, denied Vianney's variance request.

2

Electronically Filed - St Louis County - January 03, 2017 - 04:31 PM

10.     A copy of this Verified Petition has been mailed to the Missouri Attorney General as required by Section 527.110, R.S.Mo.

11.     A copy of this Petition has been mailed by registered or certified mail to Ginny Hartman, Joe Hartman, Marilyn Murphy, David Mulcahy, Orville Bopp a/k/a Arnold Bopp, Leon Miller, David Howard, Lee Holloway, Dave Powell, Marianne Powell, Brian Brader, Vicky Rees, James Sembrot, Eugene Barr, Julie Mitchel, Skip Bright a/k/a Horace Bray, Ron Ryan, Patty Howard, John Nash, Steve Powell, Scott Pozzo and Amanda Pozzo, speakers of record in opposition at the Board of Adjustment hearings as reflected in the transcripts of such hearings, and by electronic mail to certain other speakers of record that spoke in favor of Vianney's variance request who have waived their rights to a physical mailing, pursuant to section 536.110.2, R.S.Mo.

12.     A copy of this Verified Petition has been mailed to the Board of Adjustment as required by Section 536.110.2, R.S.Mo.

<u>Facts</u>

13.     Vianney HS, recognized by the St. Louis Post-Dispatch as having one of the top athletic programs in the St. Louis County metro area, is located at 1311 South Kirkwood Road, Kirkwood, Missouri (the "***Property***").

14.     Marianist Province is the owner of the Property and Vianney HS is the leasehold owner pursuant to a long-term lease.

15.     Vianney HS is dedicated to forming young men for spiritual, academic and personal excellence in the Catholic, Marianist tradition.

16.     A core belief of the Marianist is fellowship through education and athletics.

17.     The Society of Mary, through serious research, consultation, and discussion involving lay and religious educators who work in Marianist educational ministries throughout the world, has developed five educational characteristics it pledges to uphold and promote in its institutions. These five characteristics are:

(a)     **Educate for formation in faith.** Marianist schools help students to bear witness

3

Electronically Filed - St Louis County - January 03, 2017 - 04:31 PM

with a personal and committed faith that touches the heart. They will help promote a faith-and-culture dialogue and form students in the gospel's values and Christian attitudes. In addition, Marianist schools will pledge to educate in a free and responsible style, which elicits a personal response to faith, and they will make present the example and influence of Mary as the first disciple.

(b)     **Provide an integral, quality education.**   Marianist schools promote quality education of the whole person, providing a coherent curriculum and a well-formed professional staff and administration equipped with adequate supplies and finances. Marianist schools develop respect for the dignity of the person who has interior spirit and self-knowledge through athletics. In addition, Marianist schools develop in the students a concern for global and local issues of culture, ecology, and technology and they will foster a diverse faculty, staff, and student body while continuing to offer Mary as a model of integrity in relation to the realities of the world.

(c)     **Educate in family spirit.** Marianist schools create a favorable environment for education by helping to cultivate interpersonal relationships characterized by openness, respect, integrity, and dialogue through athletics. They form an educational community characterized by collaborative structures and processes and one, which expresses authority as a loving and dedicated service. In addition, Marianist schools will influence others by exhibiting the Marian traits of openness, hospitality, graciousness and faith.

(d)     **Educate for service, justice, and peace.**  Marianist schools promote a missionary spirit and educate for solidarity as well as justice and peace. They attend to the poor, promote the dignity and rights of women, encourage the formation of Christian service groups, announce justice and denounce oppression.

(e)     **Educate for adaptation and change.**  Marianist schools will educate to shape the future. They educate students to accept and respect differences in a pluralistic society by helping them develop critical thinking skills and by teaching them to be open and adaptable to local and global contexts through enculturation and interdisciplinary education. Finally, Marianist schools embrace Mary's fiat, "Do whatever he tells you", allowing them to be available to responding to the signs of the times in faith.

18.     The Property consists of approximately thirty-seven (37) acres used as a school campus for educational purposes, consisting of various school buildings, a track, a football stadium, and a sports field.

19.     An approximately four and one-half (4.5) acre parcel is used for the sports field at issue (the "*Sports Field Property*").

20.     Vianney HS is located adjacent to a single family residential neighborhood, has peacefully coexisted with its neighbors for fifty-six (56) years prior to the recent improvements to the Sports Field Property, and has not had complaints from neighbors prior to the recent improvements to the Sports Field

4

Electronically Filed - St Louis County - January 03, 2017 - 04:31 PM

Property.

21.     The City has adopted and published a zoning code in Appendix A of the City's Code of Ordinances governing certain uses of land within the City (the "***Zoning Code***").

22.     The Property is zoned R-3 Single Family, which allows school uses as a matter of right.

23.     The Zoning Code contains lighting regulations in Section 1040 (the "***Lighting Regulations***"). A true and correct copy of the Lighting Regulations is attached hereto and incorporated herein by reference as Plaintiff's **Exhibit "1"**.

24.     Section 1040.5 of the Lighting Regulations states that "the maximum illumination level for all lights at property lines adjacent to single-family residential uses shall be less than or equal to 0.1 footcandles (fc) at finished grade."

25.     The City has adopted sound regulations outside of the Zoning Code, which are found in Sections 17-36 and 17-37 of the City's Code of Ordinances (the "***Sound Regulations***"). A true and correct copy of the Sound Regulations is attached hereto and incorporated herein by reference as Plaintiff's **Exhibit "2"**.

26.     Section 17-36 of the Sound Regulations states that "[i]t shall be unlawful for any person to make, continue, or cause to be made or continued any loud, unnecessary or unusual noise or any noise which unreasonably or unnecessarily either annoys, disturbs, injures or endangers the comfort, repose, health, peace or safety of others in the city."

27.     Section 220 of the Zoning Code sets forth site plan review procedures and requirements and provides in pertinent part that site plan approval is required for construction of a new building or structure or structural modifications to the exterior of an existing structure (including additions) (the "***Site Plan Regulations***"). A true and correct copy of the Site Plan Regulations is attached hereto and incorporated herein by reference as Plaintiff's **Exhibit "3"**.

28.     Section 1110 of the Zoning Code sets forth procedures and requirements for the consideration of a variance request by the Board of Adjustment (the "***Board of Adjustment Regulations***").

29.     In 2012, in order to continue the athletic fellowship with the eighteen (18) other Catholic

Electronically Filed - St Louis County - January 03, 2017 - 04:31 PM

high schools in the St. Louis area, and to remain competitive with other secular and private high schools in the St. Louis area in providing a broad base of education, Vianney engaged Stock & Associates Consulting Engineers, Inc. ("*Stock*") to prepare plans for improvements to the Sports Field Property, including a turf field, dugouts, batting cages, and fan viewing areas.

30.    The centerpieces of the newly designed and improved Sports Field Property were a modern field light system to enable Vianney's sports teams to play at night and an updated sound system for announcements and game enhancement.

31.    Early in 2015, Vianney engaged Musco Sporting Lighting, LLC ("*Musco*"), a nationally recognized sports lighting expert, to design the lighting plan for the Sports Field Property for the purpose of use for official competitive sports events.

32.    Musco prepared a photometric lighting plan for the Sports Field Property to safely light the field, but the illumination levels significantly exceeded the 0.1 footcandles maximum as noted in the Zoning Code in a few instances (the "*Preliminary Lighting Plan*").

33.    The restriction of 0.1 footcandles is an incredibly restrictive limitation, is generally inapplicable to sports field light usage, is inconsistent with other local municipal codes and practices permitting lighting for sports fields, and, as a result, denies Vianney of any meaningful use of the Lights (hereinafter defined) for competitive sporting events or otherwise and causes a complete loss of the funding for the Lights.

34.    In the spring of 2015, Vianney discussed with the City's City Attorney and the City Planner the lighting conformance issues and the possibility that a variance may need to be submitted to the City.

35.    On or about June 19, 2015, Stock, on behalf of Vianney, submitted a variance application to the City requesting the ability to use the Lights (hereinafter defined) in excess of the 0.1 footcandle requirement pursuant to the Preliminary Lighting Plan (the "*Original Variance Application*"). A true and correct copy of the Original Variance Application, including all attachments submitted in connection therewith, is attached hereto and incorporated herein by reference as Plaintiff's **Exhibit "4"**.

36.    On or about June 23, 2015, the City Planner, after consulting with the City Attorney,

6

Electronically Filed - St Louis County - January 03, 2017 - 04:31 PM

informed Stock via email that a variance was not needed **and that Vianney could proceed with the project** in conformity with the Preliminary Lighting Plan, which provided for illumination levels in excess of the 0.1 footcandle requirement (the "*Authorizing Email*"). A true and correct copy of the Authorizing Email is attached hereto and incorporated herein by reference as Plaintiff's **Exhibit "5"**.

37.     In early October 2015, Vianney submitted to the City's Department of Public Works a lighting plan based upon the Preliminary Lighting Plan prepared by Musco (the "*2015 Lighting Plan*"). A true and correct copy of the 2015 Lighting Plan submitted to the City's Department of Public Works is attached hereto and incorporated herein by reference as Plaintiff's **Exhibit "6"**.

38.     On or about October 14, 2015, Vianney, through its general contractor, submitted to the Planning and Zoning Commission of the City of Kirkwood (the "*Planning and Zoning Commission*") for review and approval a site plan relating to improvements to the Sports Field Property as application number PZ-06-16 (the "*Site Plan*"). A true and correct copy of the Site Plan is attached hereto and incorporated herein by reference as Plaintiff's **Exhibit "7"**.

39.     On or about October 15, 2015, after submission of the 2015 Lighting Plan and the Site Plan to the City, the City issued a building permit (the "*Building Permit*") to Vianney covering the construction of "Ball Field Dugouts and Light Standards" on the Sports Field Property. A true and correct copy of the Building Permit is attached hereto and incorporated herein by reference as Plaintiff's **Exhibit "8"**.

40.     Shortly thereafter, based upon the assurances by City officials that a variance was not needed and the City's issuance of the Building Permit, Vianney purchased and installed the lights pursuant to the Lighting Plan at a cost to Vianney in excess of $235,000.00 (the "*Lights*"), scheduled additional games, and advertised the Sports Field Property and the ability to add additional freshmen teams for potential students.

41.     On or about January 11, 2016, TG Technologies installed the updated sound equipment for the Sports Field Property, including, without limitation, a mixer, a processor, an amp, six (6) speakers, a microphone, an equipment rack, and a rack power supply (collectively, the "*Sound System*"), all of which are portable and may or may not be temporarily affixed to light or other poles on the Sports Field Property.

7

Electronically Filed - St Louis County - January 03, 2017 - 04:31 PM

42.     Vianney intended to use the Sound System consistent with how Vianney historically and traditionally used its old sound system on the Sports Field Property, including, without limitation, for the following purposes: announcing line-ups, announcing batters and pitchers, and playing music, including "walk up" songs.

43.     Review of the Site Plan was delayed several times by the City on or after February 3, 2016 to finalize a landscaping plan and due to some neighbors' concerns regarding lighting, sound, and landscaping, and the deadline for the automatic approval of the Site Plan was extended consensually by Vianney several times.

44.     On or about February 11, 2016, immediately before the start of the high school baseball season, the City issued a letter prohibiting use of the Lights and the Sound System until a Site Plan was approved and all lighting met the 0.1 footcandle limitation (the "*Deprivation Letter*"). A true and correct copy of the Deprivation Letter is attached hereto and incorporated herein by reference as Plaintiff's **Exhibit "9"**.

45.     In connection with the Deprivation Letter, the City claimed it made a mistake in connection with approval of the 2015 Lighting Plan and the issuance of the Building Permit.

46.     On or about March 22, 2016, the City's Public Services Director stated in a letter to Vianney that "[i]t should be noted that the use of such audio systems is not under the purview of the City's Planning and Zoning Commission **as part of the site plan review process**." (emphasis added) (the "*Sound Letter*"). A true and correct copy of the Sound Letter is attached hereto and incorporated herein by reference as Plaintiff's **Exhibit "10"**.

47.     The Planning and Zoning Commission did not request specifications or information about the Sound System at any time nor did it make any sound studies or review and acknowledge there were no situations in which Vianney was deemed to be in violation of the Sound Regulations.

48.     While during initial testing of the Sound System there were a couple complaints by adjacent property owners, after adjustments of the Sound System there were none.

49.     The Planning and Zoning Commission considered the Site Plan at a series of meetings

Electronically Filed - St. Louis County - January 03, 2017 - 04:31 PM

beginning in November 2015.

50.     Despite Vianney's requests for the City to amend its Lighting Regulations to allow a greater illumination level under appropriate conditions for sports fields or to facilitate some compromise with neighboring residents, the City took no action to do so.

51.     On or about August 17, 2016, at a scheduled meeting of the Planning and Zoning Commission, the Planning and Zoning Commission discussed the Site Plan, noted that issues concerning lighting, sound levels, and landscaping remained, and continued the discussion to the next meeting of the Planning and Zoning Commission.

52.     Prior to the next meeting of the Planning and Zoning Commission, Vianney, through its attorney, informed the City's City Attorney that Vianney did not believe the City has the right to impose restrictions on the lights or the sound system as part of the site plan approval process.

53.     On or about September 1, 2016, Vianney submitted a new photometric lighting plan meeting the 0.1 footcandle requirement and allowing only twenty-five (25) of the sixty-six (66) lights to be used, which does not safely permit the use of the Sports Field Property for any official competitive sports events.

54.     On or about September 1, 2016, Vianney submitted a revised landscaping plan incorporating the visual and sound buffering items requested by the Planning and Zoning Commission.

55.     The Planning and Zoning Commission required various additional changes to the landscaping plan submitted by Vianney related to visual and sound buffering, and Vianney thereafter submitted a revised landscaping plan to add further trees based upon the joint recommendation of Vianney's landscaper and the City forester.

56.     On or about September 7, 2016, at a scheduled meeting of the Planning and Zoning Commission, the Planning and Zoning Commission approved the Site Plan (subject to adding even more trees to the landscaping plan over and above the previous recommendation by the City's forester providing a further site and sound buffer), and adopted the following pertinent conditions set forth in the draft Subcommittee Report dated September 7, 2016 (the "*Subcommittee Report*") and presented at the meeting

9

Electronically Filed - St Louis County - January 03, 2017 - 04:31 PM

(hereinafter, the "*Site Plan Conditions*"):

      (a)    the lights may be used for athletic practices or games only;

      (b)    the lights may only be used during the hours of 7:00 a.m. to 10:00 p.m. June 1st – August 15th, and between the hours of 7:00 a.m. and 9:00 p.m. August 16th – May 31st;

      (c)    the speakers and sound system may not be used more than thirty (30) minutes prior to a scheduled athletic event and shall be limited to the playing of the national anthem, general pre-game announcements, such as for team lineups, and in no event shall the sound system be utilized for the playing of music, play-by-play announcing, or athletic practices; and

      (d)    the speakers and sound systems may only be used during the hours of 7:00 a.m. to 10:00 p.m. June 1st – August 15th, and between the hours of 7:00 a.m. and 9:00 p.m. August 16th – May 31st.[1]

A true and correct copy of the Subcommittee Report is attached hereto and incorporated herein by reference as Plaintiff's **Exhibit "11"**.

      57.    The Site Plan Conditions prevent any meaningful nighttime or daytime use of the Sound System, such as for gym activities, intramurals, band practice and other group activities, and any realistic use of the Lights for periods of time while it is dark, and are facially arbitrary and unreasonable.

      58.    The Site Plan Conditions impact the ability of the members of Vianney's sports teams to enjoy the customary and prevalent "ball park" experience for high school sports which entails playing games under the lights at night in front of their peers with typical announcements and music.

      59.    On or about September 29, 2016, Vianney submitted another revised landscaping plan to the City and was informed by the City that two adjustments to the landscaping plan needed to be made, which Vianney incorporated in a further revised landscaping plan submitted to the City by Vianney on or about October 3, 2016.

      60.    On October 6, 2016, Vianney filed a lawsuit against the City and the members of the Planning and Zoning Commission styled as Marianist Province et al. v. City of Kirkwood et al. bearing

---

[1] The stated conditions are taken from a copy of the draft subcommittee report provided to Vianney and orally approved on September 7, 2016 since no formal written approval with enumerated conditions has yet been received by Vianney.

Electronically Filed - St Louis County - January 03, 2017 - 04:31 PM

case no. 16SL-CC03734 in the Circuit Court of St. Louis County, alleging that the Planning and Zoning Commission's approval of the Site Plan with the Site Plan Conditions was arbitrary, capricious, unreasonably, invalid, illegal, ineffective, null and void, unconstitutional, ultra vires, and not supported by competent and substantial evidence.

61.     On or about October 6, 2016, Vianney submitted a variance request to the Board of Adjustment requesting use of the Lights in excess of the 0.1 footcandle requirement in accordance with the 2015 Lighting Plan (the "*Variance*") to allow use of the Sports Field Property for competitive sports.  A true and correct copy of the Variance is attached hereto and incorporated herein by reference as Plaintiff's **Exhibit "12"**.

62.     On or about October 18, 2016, Vianney substituted for the 2015 Lighting Plan an improved lighting plan dated October 16, 2016 for consideration by the Board of Adjustment on the pending Variance (the "*October 2016 Lighting Plan*"). A true and correct copy of the October 2016 Lighting Plan is attached hereto and incorporated herein by reference as Plaintiff's **Exhibit "13"**.

63.     The October 2016 Lighting Plan measured property line illumination levels three (3) feet above grade and provided that only three (3) residential properties abutting the Sports Field Property had illumination levels exceeding the 0.1 footcandle requirement, with the highest illumination level occurring at only one point on the photometric contained within the October 2016 Lighting Plan at a level of 1.3 footcandles (fc).

64.     On November 28, 2016, Vianney substituted for the October 2016 Lighting Plan an improved lighting plan dated November 28, 2016 for consideration by the Board of Adjustment on the pending Variance (the "*November 2016 Lighting Plan*"). A true and correct copy of the November 2016 Lighting Plan is attached hereto and incorporated herein by reference as Plaintiff's **Exhibit "14"**.

65.     The November 2016 Lighting Plan measured property line illumination levels at grade and provided that only (3) residential properties abutting the Sports Field Property had illumination levels exceeding the 0.1 footcandle requirement, with the highest illumination level occurring at only one point on the photometric contained within the November 2016 Lighting Plan at a level of 1.2 footcandles (fc).

Electronically Filed - St Louis County - January 03, 2017 - 04:31 PM

66.     The Variance application included the following self-imposed conditions and restrictions on Vianney's use of the Lights (hereinafter, the "***Proposed Variance Conditions***"):

(a)     During the periods of November 15 to March 14 and June 1 to August 31 of each calendar year, the lights shall not be turned on at any time;

(b)     Lights shall not be turned on any Sunday during the entire calendar year;

(c)     During the periods of March 15 to May 31 and September 1 to November 14 of each year, the lights shall be completely turned off no later than 9:00 p.m., except: (i) one light standard shall be permitted to remain turned on for a reasonable time thereafter to allow for the safe exit of players and visitors, and (ii) Vianney shall be granted ten (10) exceptions during the period of use to extend the light usage until 10:00 p.m. in circumstances of a late start, inclement weather delay, or other unforeseen acts of God, unsafe conditions or unique situations;

(d)     Use of the sound system shall comply with Section 17-36 of the City Code of Ordinances. The sound system shall not be used later than 9:00 p.m., except that Vianney shall be granted ten (10) exceptions during the period of use to extend the sound system usage until 10:00 p.m. in circumstances of a late start, inclement weather delay, or other unforeseen acts of God, unsafe conditions or unique situations. No music shall be played after 7:15 p.m., except that the National Anthem shall be permitted to be played on the sound system at the beginning of games commencing after such time;

(e)     Vianney shall utilize a maximum of four (4) speakers (reduced from an available six (6) speakers);

(f)     Vianney is willing to lower the location of the speakers on the poles on which they are mounted if requested by the City or neighboring property owners;

(g)     Vianney shall use all reasonable efforts to encourage visitors not to park on neighboring streets located in the Geyer Forest, Forest Glen, and Oakshire Estates Subdivisions and not to utilize such subdivisions as a means to access the Vianney field; and

(h)     For the few properties for which lighting at the property line exceeds 0.1 footcandles (fc) at finished grade, Vianney shall provide a one-time allowance of $2,000.00 to provide for additional landscaping on the affected property owner's property, the type and placement of which shall be as reasonably requested by the owner and for blinds, awnings and window treatments.

67.     The Proposed Variance Conditions further restrict Vianney's use of the Lights and provide a benefit for the residential neighbors abutting the Sports Field Property compared to the Site Plan Conditions.

Electronically Filed - St Louis County - January 03, 2017 - 04:31 PM

68.     On November 14, 2016, the Board of Adjustment conducted its first hearing on the Variance, Vianney was permitted to present testimony in favor of granting the Variance, and numerous exhibits of evidence in support of the Variance were introduced into the record.

69.     The Board of Adjustment continued discussion of the Variance to a November 28, 2016 special hearing and the Board of Adjustment requested that Vianney resubmit a lighting plan with property line illumination levels measured at grade in accordance with the requirements of the Lighting Ordinance, which was completed on the November 2016 Lighting Plan.

70.     On November 28, 2016, the Board of Adjustment conducted its second hearing on the Variance, supporters of the Variance and residents of the City in opposition of the Variance were permitted to testify, and the Board of Adjustment further continued discussion of the Variance to a December 5, 2016 special hearing.

71.     On December 5, 2016, the Board of Adjustment conducted its final hearing on the Variance, finished hearing the testimony of residents in opposition of the Variance, and allowed Vianney to present arguments and testimony in rebuttal of the opposition.

72.     On December 5, 2016, at the conclusion of the final hearing, the Board of Adjustment voted to deny the Variance by a vote of 5 to 0 (the "*Variance Denial*").

73.     Prior to the Variance Denial, on or about November 10, 2016, the City sent Vianney a letter informing it that third party use of the Sports Field Property constitutes a recreational field use and requires a special use permit (the "*Use Determination Letter*") despite Vianney permitting third party use for fifty-six (56) years. A true and correct copy of the Use Determination Letter is attached hereto and incorporated herein by reference as Plaintiff's **Exhibit "15"**.

74.     Vianney has used the Sports Field Property with third parties for fifty-six (56) years in order to further its mission, evangelize, attract students, and pay for the maintenance, repairs and replacements of the Sports Field Property as well as to be consistent with other schools in the area, all of which allow third parties to use their facilities. Such historic third-party uses include, but are not limited to, the following:

13

Electronically Filed - St Louis County - January 03, 2017 - 04:31 PM

    (a)     Grade school use;

    (b)     Grade school age events;

    (c)     Partner high school use;

    (d)     Partner program use with local universities;

    (e)     Youth athletic club use;

    (f)     Charitable events; and

    (g)     Donor and alumni connections.

75.     During the permit approval process and the site plan review process in the fall of 2015, and at other times, City officials, in response to inquiries by Vianney, made statements that Kirkwood High School, a public high school located in the City, is not subject to the City's Zoning Code (presumably pursuant to Article XI, Section 1(a) of the Missouri Constitution, Section 177.073, R.S.Mo. and court interpretations of Section 89.020, R.S.Mo.).

**COUNT I**
**Administrative Review (Variance) – Section 89.110, R.S.Mo.**

COMES NOW Vianney and for Count I of its Verified Petition against the City and the Board of Adjustment states to this Honorable Court as follows:

76.     Vianney realleges, restates and incorporates by reference each and every allegation contained in the Allegations Common to All Counts as if more fully set forth herein.

77.     The Variance Denial is arbitrary, capricious, unreasonable, invalid, illegal, ineffective, null and void, unconstitutional, ultra vires, not supported by competent and substantial evidence, and involves an abuse of discretion for the following reasons:

    (a)     the Variance Denial was not based upon substantial and competent evidence and there was no rational basis for the Variance Denial;

    (b)     the Variance Denial violated Vianney's rights under RLUIPA, 42 U.S.C. § 2000cc *et seq.*

    (c)     the Variance Denial violated Vianney's rights under Section 1.301, R.S.Mo.

78.     Vianney has exhausted all of its administrative remedies.

14

Electronically Filed - St Louis County - January 03, 2017 - 04:31 PM

79.     Vianney has no adequate remedy at law.

WHEREFORE, Vianney prays that this Honorable Court enter judgment on Count I of its Petition

in favor of Vianney and against the City and the Board of Adjustment to:

(a)     Review the record to determine whether Defendant City's Variance Denial is supported by competent and substantial evidence and in accordance with its Zoning Code;

(b)     Enter its order finding the Variance Denial is arbitrary, capricious, unreasonable, invalid, illegal, ineffective, null and void, unconstitutional, ultra vires, and not supported by competent and substantial evidence;

(c)     Grant Plaintiff such other and further relief as the Court deems equitable, just and proper.

**COUNT II**
**Inverse Condemnation – Article I, § 26 of the Missouri Constitution**

COMES NOW Vianney and for Count II of its Verified Petition against the City states to this

Honorable Court as follows:

80.     Vianney realleges, restates and incorporates by reference each and every allegation

contained in the Allegations Common to All Counts and Count I as if more fully set forth herein.

81.     Article I, § 26 of the Missouri Constitution states that "private property shall not be taken

or damaged for public use without just compensation."

82.     The City possesses the power of eminent domain.

83.     Based on the repeated assurances of the City that a variance was not needed by Vianney in

the summer and fall of 2015, and the City's issuance of a building permit for light standards in October

2015, Vianney purchased and installed the Lights on the Sports Field Property.

84.     After Vianney had purchased and installed the Lights and the Sound System, the City

reversed its approval of the Lights when it sent Vianney the Deprivation Letter stating that Vianney was

prohibited from using the Lights until Vianney's Site Plan for the Sports Field Property was approved.

85.     After a prolonged series of meetings of the City's Planning and Zoning Commission, on

September 7, 2016, the Planning and Zoning Commission approved the Site Plan with a number of

Electronically Filed - St. Louis County - January 03, 2017 - 04:31 PM

restrictions and conditions on Vianney's use of the Lights and Sound System, including a restriction prohibiting Vianney from using the Lights at an illumination level to allow for safe play of sporting events.

86.     Vianney later applied to the City's Board of Adjustment for a variance to allow Vianney to use the Lights at an illumination level that would allow for the safe play of sporting events, but the Board of Adjustment denied the variance on December 5, 2016.

87.     The foregoing actions of the City constitute a wrongful appropriation of the Sports Field Property and a deprivation of Vianney's use of the Lights resulting in damage to Vianney.

WHEREFORE, Vianney prays that this Honorable Court enter judgment on Count II of its Petition in favor of Vianney and against the City to enter judgment in favor of Plaintiff and against the City in the sum of no less than $235,000.00 and for such other and further relief as the Court deems equitable, just and proper.

**COUNT III**
**Violation of the Religious Land Use and Institutionalized Persons Act**
**Equal Terms Claim 42 U.S.C. § 2000cc(b)(1)**
**As-Applied**

COMES NOW Vianney and for Count III of its Verified Petition against the City states to this Honorable Court as follows:

88.     Vianney realleges, restates and incorporates by reference each and every allegation contained in the Allegations Common to All Counts and Counts I through II as if more fully set forth herein.

89.     In order to prevail on an equal terms claim under RLUIPA, Vianney must demonstrate four elements: (1) a religious assembly or institution, (2) subject to a land use regulation, that (3) treats the religious assembly on less that equal terms with (4) a nonreligious assembly or institution. *Primera Iglesia Bautista Hispana of Boca Raton, Inc. v. Broward Cnty*, 450 F.3d 1295, 1307 (11th Cir. 2006) (citing 42 U.S.C. § 2000cc(b)(1)).

90.     While the Eighth Circuit Court of Appeals has not decided a RLUIPA land use case, the Eleventh Circuit has held that an equal terms violation is subject to strict scrutiny, meaning the government's conduct will be upheld only if the government can establish that its conduct was narrowly

Electronically Filed - St Louis County - January 03, 2017 - 04:31 PM

tailored in order to achieve a compelling governmental interest. *Midrash Sephardi*, 366 F.3d at 1232 (citing *Lukumi*, 508 U.S. at 546).

91.     The Eleventh Circuit recognizes three separate potential equal terms violations: "(1) a statute that facially differentiates between religious and nonreligious assemblies or institutions; (2); a facially neutral statute that is nevertheless "gerrymandered" to place a burden solely on religious, as opposed to nonreligious, assemblies or institutions," or (3) a truly neutral statute that is selectively enforced against religious, as opposed to nonreligious assemblies or institutions."

92.     With respect to the as-applied challenge, the first type of violation is at issue.

93.     Vianney is a religious assembly subject to City's Zoning Code.  Accordingly, Vianney has met the first two prongs of RLUIPA.

94.     The City's Zoning Code and map provide that a private religious school with all of its attendant uses, including athletic fields, is an appropriate use of land.

95.     Vianney properly secured outdoor lighting from the City and constructed light towers for the Sports Field Property.

96.     The City, however, denied Vianney's ability to use the Sports Field Property for its intended purpose through the City's application of the Zoning Code, by prohibiting Vianney from using the Lights and Sound System pursuant to the Deprivation Letter, by imposing the various Site Plan Conditions, by denying Vianney's variance request for use of the Lights, and by prohibiting Vianney from allowing third parties to use its facilities pursuant to the Use Determination Letter (collectively, the "***Equal Terms Violations***").

97.     In engaging in the Equal Terms Violations, the City has essentially shut down the Sports Field Property, failed to provide a compelling governmental interest in shutting down the Sports Field Property, and failed to narrowly tailor a remedy to neighbor concern in order to achieve a compelling governmental interest.

98.     The City has several other athletic fields within its boundaries that have adequately lighted athletic fields, including, but not limited to, athletic fields of Kirkwood High School, which is allowed to

Electronically Filed - St Louis County - January 03, 2017 - 04:31 PM

light its fields without restrictions.

99.     The Equal Terms Violations, including, without limitation, the Board of Adjustment's denial of Vianney's variance for lighting on the Sports Field Property, while allowing athletic parks as of right and other secular assemblies in the same zoning district, has resulted in an as-applied violation of the equal terms provision RLUIPA as it has treated Vianney on less than equal terms with non-religious assemblies or institutions and the City has not demonstrated a compelling governmental interest in doing so.

100.    Accordingly, the City has violated Vianney's rights recognized under federal law as contained in 42 USC § 2000cc(b)(1) (equal terms) of RLUIPA.

101.    As a direct result of the City's violations of Vianney's rights under 42 USC § 2000cc(b) of RLUIPA, as alleged above, Vianney is suffering irreparable harm for which there is no adequate remedy at law.

WHEREFORE, Vianney prays that this Honorable Court enter judgment on Count III of its Petition in favor of Vianney and against the City to:

(a)     Adjudge, decree and declare the rights and other legal relations of the parties to the subject matter in controversy in order that such declaration shall have the force and effect of final judgment and that the Court retains jurisdiction of this matter for the purpose of enforcing the Court's Order;

(b)     Pursuant to 28 U.S.C. § 2201, declare the decision by City to deny Vianney a variance and otherwise restrict Vianney pursuant to the Equal Terms Violations to be in violation of the Religious Land Use and Institutionalized Persons Act;

(c)     Pursuant to 28 U.S.C. § 2202, 42 U.S.C. § 1983, 42 U.S.C. § 2000cc-4 and 71 P.S. § 2401, permanently enjoin the City from denying Vianney full use of the Sports Field Property without restrictions;

(d)     Pursuant to 42 U.S.C. § 1988, 42 U.S.C. § 2000cc-4(d), and other applicable law, award Vianney its reasonable attorneys' fees, costs; and

(e)     Grant Vianney such other and further relief as the Court deems equitable, just and proper.

Electronically Filed - St Louis County - January 03, 2017 - 04:31 PM

## COUNT IV
### Violation of the Religious Land Use and Institutionalized Persons Act
### Substantial Burden Claim - 42 U.S.C. § 2000cc(a)
### As-Applied Challenge

COMES NOW Vianney and for Count IV of its Verified Petition against the City states to this Honorable Court as follows:

102.    Vianney realleges, restates and incorporates by reference each and every allegation contained in the Allegations Common to All Counts and Counts I through III as if more fully set forth herein.

103.    Congress provided in Section 2(a)(1) of RLUIPA statutory protections for "religious exercise" as follows:

> No government shall impose or implement a land use regulation in a manner that imposes a substantial burden on the religious exercise of a person, including a religious assembly or institution, unless the government demonstrates that imposition of the burden on that person, assembly, or institution * * * is in furtherance of a compelling government interest [and] is the least restrictive means of furthering that compelling government interest.

> 42 U.S.C. 2000cc(a)(1).

104.    While Congress did not define the term "substantial burden" in the Act, Congress included the definition "religious exercise" to broadly include:

> "any exercise of religion, whether or not compelled by, or central to, a system of religious belief," and specifies that the "use, building, or conversion of real property for the purpose of religious exercise shall be considered to be religious exercise of the person or entity that uses or intends to use the property for that purpose."

> 42 U.S.C. 2000cc-5(7).

105.    Congress further directed that RLUIPA should be, "construed in favor of a broad protection of religious exercise, to the maximum extent permitted by the terms of this chapter and the Constitution." 42 U.S.C. 2000cc-3(g).

106.    The "substantial burden" provision of RLUIPA applies when (1) the burden is imposed in a program that receives federal financial assistance; (2) the imposition or removal of the burden affects

19

Electronically Filed - St Louis County - January 03, 2017 - 04:31 PM

interstate commerce; or (3) the burden is imposed in a system in which a government makes individualized assessments about how to apply a land use regulation. 42 U.S.C. 2000cc(a)(2)(A), (B), and (C).

107.     Assemblies and institutions are substantially burdened for purposes of RLUIPA if, given the totality of the circumstances, when a land-use regulation or decision actually and substantially inhibits religious exercise. *Midrash Sephardi, Inc. v. Town of Surfside,* 366 F.3d 1214 (11th Cir. 2004).

108.     Under the *Midrash* interpretation of RLUIPA, a land use decision that prevents a religious institution from building facilities necessary to meet its religious needs and those of its members imposes a substantial burden on that institution.

109.     The City applied its Zoning Code, which is a land use regulation, to the Property resulting in an individual assessment of Vianney's proposed uses of the Property for religious assembly and a lighted athletic field.

110.     The City, through its Board of Adjustment, has the discretion to approve or deny a variance.

111.     The decisions of the City to engage in the Equal Terms Violations substantially inhibit religious exercise by preventing Vianney, a religious institution, from building facilities necessary to meet its religious needs and those of its members imposes a substantial burden on that institution and thus amounts to a "substantial burden" as set forth in 42 U.S.C. 2000cc (a)(1).

112.     These decisions of the City to engage in the Equal Terms Violations were not made in furtherance of a compelling governmental interest, nor were they the least restrictive means of furthering any compelling governmental interest.

113.     Accordingly, the City has imposed a "substantial burden" on Vianney's rights by denying it the ability to use the Property for religious assembly as recognized under the Religious Land Use and Institutionalized Persons Act, 42 USC § 2000cc(a)(1).

114.     As a direct result of the City's violations of Vianney's rights protected under 42 USC § 2000cc(a) of RLUIPA resulting in Vianney suffering irreparable harm for which there is no adequate remedy at law.

115.     Furthermore, as a direct result of the City's violations of Vianney's rights under 42 U.S.C.

20

Electronically Filed - St Louis County - January 03, 2017 - 04:31 PM

§ 2000cc(a) of RLUIPA as alleged above, Vianney has suffered and is entitled to recover equitable relief, costs, and attorneys' fees.

WHEREFORE, Vianney prays that this Honorable Court enter judgment on Count IV of its Petition in favor of Vianney and against the City to:

(a)  Adjudge, decree and declare the rights and other legal relations of the parties to the subject matter in controversy in order that such declaration shall have the force and effect of final judgment and that the Court retains jurisdiction of this matter for the purpose of enforcing the Court's Order;

(b)  Pursuant to 28 U.S.C. § 2201, declare the decision by City to deny Vianney a variance and otherwise restrict Vianney pursuant to the Equal Terms Violations to be in violation of the Religious Land Use and Institutionalized Persons Act;

(c)  Pursuant to 28 U.S.C. § 2202, 42 U.S.C. § 1983, 42 U.S.C. § 2000cc-4 and 71 P.S. § 2401, permanently enjoin the City from denying Vianney full use of the Sports Field Property without restriction;

(d)  Pursuant to 42 U.S.C. § 1988, 42 U.S.C. § 2000cc-4(d), and other applicable law, award Vianney its reasonable attorneys' fees, costs; and

(e)  Grant Vianney such other and further relief as the Court deems equitable, just and proper.

**COUNT V**
**Violation of Missouri Religious Freedom Restoration Act**
**Section 1.302, R.S.Mo.**

COMES NOW Vianney and for Count V of its Verified Petition against the City states to this Honorable Court as follows:

116.  Vianney realleges, restates and incorporates by reference each and every allegation contained in the Allegations Common to All Counts and Counts I through IV as if more fully set forth herein.

117.  The Missouri Religious Freedom Restoration Act ("**RFRA**") protects organizations and individuals from government-imposed restrictions on religious exercise.

118.  Under RFRA, government entities cannot restrict another entity's religious exercise, even if the restriction results from a rule of general applicability, unless the government entity demonstrates the burden it has imposed furthers a compelling governmental interest and is not unduly restrictive considering

Electronically Filed - St Louis County - January 03, 2017 - 04:31 PM

the relevant circumstances.

119.    Vianney's use of the Property for lighted athletic fields is a function of its religious beliefs, and its intention to continue to use the Property for this purpose, is itself religious exercise by Vianney.

120.    The decisions by the City to engage in the Equal Terms Violations have imposed and continue to impose undue restrictions on Vianney's religious exercise.

121.    The undue restrictions the City has imposed and continues to impose on Vianney's religious exercise are not essential to a compelling governmental interest.

122.    As a direct result of the City's violation of Vianney's rights under Section 1.302, R.S.Mo., as alleged above, Vianney is suffering irreparable harm for which there is no adequate remedy at law, and Vianney is entitled to recover equitable relief, compensatory and nominal damages, and costs.

WHEREFORE, Vianney prays that this Honorable Court enter judgment on Count IV of its Petition in favor of Vianney and against the City to:

(a)    Adjudge, decree and declare the rights and other legal relations of the parties to the subject matter in controversy in order that such declaration shall have the force and effect of final judgment and that the Court retains jurisdiction of this matter for the purpose of enforcing the Court's Order;

(b)    Declare the decision by City to deny Vianney a variance and otherwise restrict Vianney pursuant to the Equal Terms Violations to be in violation of the Religious Freedom Restoration Act;

(c)    Permanently enjoin the City from denying Vianney full use of the Sports Field Property without restriction;

(d)    Award Vianney its reasonable attorneys' fees and costs; and

(e)    Grant Vianney such other and further relief as the Court deems equitable, just and proper.

Electronically Filed - St Louis County - January 03, 2017 - 04:31 PM

Respectfully submitted,

JENKINS & KLING, P.C.


By:___/s/ Stephen L. Kling, Jr._____
          Stephen L. Kling, Jr. #29250
          Michael P. Stephens  #37491
          Sally M. Sinclair #66229
          150 North Meramec Avenue, Suite 400
          St. Louis, MO 63105
          (314) 721-2525 ph.
          (314) 721-5525 fax
          skling@jenkinskling.com
          mstephens@jenkinskling.com
          ssinclair@jenkinskling.com

*Lead Attorneys for Plaintiff*


          and


DALTON & TOMICH, PLC


By:    /s/  Daniel P. Dalton_____
         *Pro Hac Vice pending:*
         *Michigan Bar No. P 44056*
         The Chrysler House
         719 Griswold Street, Suite 270
         Detroit, MI  48226
         Tel. (313) 859-6000
         ddalton@daltontomich.com

*Attorney for Plaintiff as to the RLUIPA and*
*Constitutional Claims, only*

Electronically Filed - St. Louis County - January 03, 2017 - 04:31 PM

**VERIFICATION**

STATE OF MISSOURI     )
                               ) SS
COUNTY OF ST. LOUIS    )

       I, Michael Loyet, being first duly sworn, upon oath state that I am the President of St. John Vianney High School, Inc., and in my capacity as President, and as otherwise authorized on behalf of Plaintiffs, I have read the above and foregoing Verified Petition and that the facts stated therein are true and correct.

 

Michael Loyet

       Subscribed and sworn before me, a notary public in and for the State of Missouri, this _3 r d_ day of January, 2017.

Elaine Schnur

My Commission Expires:              Notary Public

ELAINE SCHNUR
Notary Public, Notary Seal
State of Missouri
Jefferson County
Commission # 14631242
My Commission Expires November 02, 2018

24