**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF MISSOURI**
**EASTERN DIVISION**

MARIANIST PROVINCE OF THE UNITED STATES
and
ST. JOHN VIANNEY HIGH SCHOOL, INC.,

Plaintiffs/Relators,

v.

CITY OF KIRKWOOD,

Defendant,

and
BOARD OF ADJUSTMENT OF THE CITY OF KIRKWOOD,

Respondent.

Case No. 4:17-cv-00805-RLW

**DEFENDANTS' STATEMENT OF UNDISPUTED MATERIAL FACTS**

COME NOW Defendants the City of Kirkwood and the Board of Adjustment of the City of Kirkwood, pursuant to Rule 56 of the Federal Rules of Civil Procedure and Local Rule 7-4.01, and submit the following as and for their statement of undisputed material facts:

**Vianney's History in Kirkwood**

1. Vianney has been operating its all-male Marianist high school in the City of Kirkwood since 1960. (Exhibit 1, Loyet Dep. 16:19–17:9, Jan. 24, 2018.)

2. Vianney's campus does not have residential uses on all of its borders. (Exhibit 2, De Phillips Dep. 20:11–17, Feb. 6, 2018.)

3. At the north end of Vianney's 37-acre campus is a sports field that has traditionally been used primarily for baseball but also has been used for soccer, as well as for some football,

lacrosse, ultimate Frisbee, and summer sports camps. (Exhibit 2, De Phillips Dep. 20:11–13; Exhibit 3, Dep. Ex. 54, at 3–4; Exhibit 1, Loyet Dep. 44:18–23.)

4. Vianney has used its north field and played baseball and other sports on that field *without lights* for over fifty-seven years. (Exhibit 1, Loyet Dep. 52:4–6.)

5. The west and northwest sides of Vianney's baseball field are bordered by residential homes. (Exhibit 2, De Phillips Dep. 20:18–21.)

6. Vianney also has a turfed football, soccer and track facility on the south side of its campus that has lights and a sound system, which Vianney operates without any restrictions from the City of Kirkwood. (Exhibit 1, Loyet Dep. 22:17–22, 24:2–9, 301:10–18; Exhibit 2, De Phillips Dep. 17:2–9; Exhibit 4, Bensing Dec. ¶ 5.)

7. The lights for Vianney's football/soccer facility were installed prior to 2012. (Exhibit 1, Loyet Dep. 104:15–23.)

**Kirkwood's Lighting Code**

8. Prior to 2012, Kirkwood's Zoning Code did not contain any lighting regulations. (Exhibit 5, Bensing Dep. 28:20–21, Feb. 27, 2018.)

9. In November 2012, as part of a comprehensive review and revision to the Zoning Code, Kirkwood adopted a revised Zoning Code that included lighting regulations limiting the height of all pole-mounted lighting fixtures for outdoor sports activities and play fields to 80 feet and limiting the maximum illumination level of light cast off-site onto adjoining residential properties to less than or equal to 0.1 footcandles ("Lighting Regulations"). (Exhibit 6, KWD_004092–277, at KWD_004092, KWD_004264–65.)

10. The stated "Purpose" of the Lighting Regulations is "to strike a balance of safety and aesthetics by providing lighting regulations that protect drivers and pedestrians from glare and

reduce to reasonable limits the trespass of artificial lighting onto neighboring properties and public or private rights-of-way." (Exhibit 6, KWD_004092–277, at KWD_004263.)

11. The Lighting Regulations are intended to protect the public health, safety and welfare of all residents and to protect homeowners from intrusive light trespass. (Exhibit 6, KWD_004092–277, at KWD_004263; Exhibit 5, Bensing Dep. 28:3–8; Exhibit 7, Spencer Dep. 150:1–4, Feb. 13, 2018; Exhibit 8, Dec. 5, 2016 Tr. 161:8–12.)

12. The Lighting Regulations have different (higher) maximum illumination levels for properties adjacent to commercial/non-residential properties than for those adjacent to single-family residential uses. (Exhibit 6, KWD_004092–277, at KWD_004265.)

13. The current Lighting Regulations provide in relevant part: "The maximum illumination level of light cast off-site onto properties with single-family residential uses shall be less than or equal to 0.1 footcandles (fc) at finished grade." (Exhibit 9, Dep. Ex. 25.)

14. The .1 fc restriction is a similar restriction to the restrictions used in other municipalities. (*E.g.*, Exhibit 10, Frontenac Code of Ordinances § 527.050 ("*Illumination from light trespass shall not exceed one-tenth (0.1) foot-candles as measured at the property line for adjacent residential property* or one-half (0.5) foot-candles as measured at the property line for adjacent non-residential property."); Exhibit 11, City of Creve Coeur Code of Ordinances § 405.680(B)(4) (permitting *no* light trespass: "Lighting shall not be cast upon an adjacent property or right-of-way nor shall glare be emitted from an illuminant source.").)

**The Renovations of the North Sports Field**

15. In late 2014 and early 2015, Vianney decided to renovate its north sports field property. (Exhibit 12, VIANNEY 003247–48, at VIANNEY 003248; Exhibit 13, VIANNEY 003249–51, at VIANNEY 003250.)

16. While it was Vianney's desire to put lights on that field as part of its renovations, Vianney was aware of Kirkwood's Lighting Regulations and knew it may not be able to use those lights for sports activities because of the Lighting Regulations. (Exhibit 1, Loyet Dep. 136:21–137:1, 178:1–8, 274:15–21; Exhibit 2, De Phillips Dep. 36:23–37:2, 39:2–11, 44:21–45:23.)

17. Vianney decided to move forward with the renovations regardless of whether it could have lights on the north field, and its Board approved the renovation project. (Exhibit 2, De Phillips Dep. 83:16–20; *see also* Exhibit 13, VIANNEY 003249–51, at VIANNEY 003250 (voting to approve the renovations of the north field and stating that if funds were needed for soil stabilization, the funds earmarked for the lights would be used); Exhibit 1, Loyet Dep. 274:15–21.)

18. Vianney announced that it was proceeding with the project without mentioning the installation of the lights and without knowing if it could use lights on the north field. (Exhibit 2, De Phillips Dep. 40:23–41:1; Exhibit 14, Dep. Ex. 40.)

19. Vianney signed contracts with contractors for the renovations to the north field without knowing if it could use lights on that field. (Exhibit 2, De Phillips Dep. 42:19–21.)

20. Vianney started construction on the north field without knowing if it could use lights on that field. (Exhibit 2, De Phillips Dep. 42:15–18.)

21. In early 2015, after considering alternative layouts, Vianney's contractors told Vianney that there was no lighting configuration that would both comply with the Lighting Regulations and allow baseball to be safely played at night. (Exhibit 15, Dep. Ex. 66; Exhibit 16, Dep. Ex. 42, at KWD_002569.)

22. When Vianney's contractors were unable to design a lighting layout that would bring the light levels into compliance with the Lighting Regulations, Vianney sought a variance

from the Kirkwood Board of Adjustment. (Exhibit 1, Loyet Dep. 178:1–12; Exhibit 17, Dep. Ex. 38; Exhibit 15, Dep. Ex. 66; Exhibit 16, Dep. Ex. 42.)

23. Vianney knew that it had to prove a hardship to be able to get a variance and knew the Kirkwood Board of Adjustment could deny its application for a variance from the Lighting Regulations. (Exhibit 1, Loyet Dep. 181:8–21, 274:4–14.)

24. Vianney's project engineer commented on Vianney's chance of obtaining a variance for the lights, stating "[b]ased on the impacted properties I cannot imagine we would ***ever*** get a Variance[.]" (Exhibit 18, Dep. Ex. 110 (emphasis added).)

25. In Vianney's June 2015 variance application, Vianney's President, Mike Loyet, stated why Vianney wanted to light the field and to what use it would be put: "to practice and compete" in sporting events. (Exhibit 16, Dep. Ex. 42, at KWD_002571.)

26. After Vianney submitted its variance application, Kirkwood's former City Planner determined a variance was not required based on his belief that there were already lights on the north sports field and that the existing non-conforming situation of the existing lights would be improved by the proposed lighting. (Exhibit 7, Spencer Dep. 28:12–29:12, 148:2–7; Exhibit 19, Dep. Ex. 58, at KWD_003562.)

27. The former City Planner's belief that there were already lights on the north sports field was incorrect as there had never been lights on that field. (Exhibit 1, Loyet Dep. 212:13–21; Exhibit 7, Spencer Dep. 84:6–7, 148:2–10.)

28. The former City Planner contacted Vianney's engineers and told them that a variance was not required because "a currently, non-conforming situation is being made less non-conforming." (Exhibit 19, Dep. Ex. 58; Exhibit 20, Dep. Ex. 43.)

29. Although no one at Vianney or its contractors understood what the currently "non-conforming situation" was and did not understand what the City Planner meant by "a currently non-conforming situation is being made less non-conforming," they decided to move forward with purchasing and installing the lighting without seeking an explanation. (Exhibit 1, Loyet Dep. 189:16–19, 190:15–18, 250:3–5; Exhibit 2, De Phillips Dep. 54:4–9, 54:12–55:18; Exhibit 21, Stock Dep. 116:11–14, 118:10–12, 122:14–25, Feb. 14, 2018; Exhibit 22, Buening Dep. 26:9–20, 31:12–20, Feb. 15, 2018; Exhibit 23, Stych Dep. 138:20–24, Feb. 8, 2018; Exhibit 24, Dep. Ex. 70.)

30. When Vianney was renovating the north field, its soccer teams used alternative fields for practices and games. (Exhibit 2, De Phillips Dep. 69:6–70:9; Exhibit 1, Loyet Dep. 282:14–24.)

31. After the lights were installed, the City of Kirkwood received complaints regarding the lights from the residential neighborhood bordering the north athletic field. (Exhibit 25, Raiche Dep. 59:4–8, Feb. 12, 2018; Exhibit 26, Schenck Dep. 106:3–17, Feb. 27, 2018; Exhibit 27, Nov. 14, 2016 Tr. 19:15–18.)

32. When the City of Kirkwood discovered the former City Planner's error, Kirkwood advised Vianney that the Lighting Regulations would be enforced. (Exhibit 28, KWD_002597; Exhibit 29, KWD_002884–86, at KWD_002886.)

**Vianney's Current Use of the Field**

33. Under Kirkwood's Lighting Regulations, Vianney can still turn on the lights on the north field, but not at levels that allow it to play baseball. (Exhibit 23, Stych Dep. 69:11–24.)

34. The illumination levels permitted by the Kirkwood Lighting Regulations would provide sufficient illumination to gather on the field for prayer. (Exhibit 1, Loyet Dep. 61:1–10.)

35. Vianney's Interrogatory Answers indicate that the north field has historically and continues to be used in the following ways: (1) practices and games for Vianney's baseball teams, (2) practices for Vianney's soccer teams, (3) summer sports camps, (4) school day events such as "fields days and emergency evacuation drills," and (5) use by third parties "for various athletic purposes." (Exhibit 3, Dep. Ex. 54, at 3–4.)

36. When Vianney uses all of the newly installed lights on its baseball field, the light cast upon the neighboring properties exceeds Kirkwood's illumination level regulations. (Exhibit 16, Dep. Ex. 42, at KWD_002569, KWD_002575; Exhibit 1, Loyet Dep. 98:5–8.)

37. When Vianney's lights are turned on at the levels Vianney desires, the below photographs show the levels of light trespass onto the neighboring residential homes:





(Exhibit 30, Dep. Ex. 60.)

38. Vianney can, and does, continue to use the baseball field during the day, as it has for over fifty years. (Exhibit 2, De Phillips Dep. 14:15–17, 15:12–17; Exhibit 1, Loyet Dep. 85:18–86:1, 108:24–109:3.)

39. Vianney's CFO testified that the north field continues to be used "a substantial amount" and that Vianney's students are using the north field more now than they have historically because of the other upgrades to the field:

> Q So it really looks like historically the North Athletic Complex has, ***and still has***, a ***substantial*** amount of use by both Vianney and third parties invited on to Vianney's campus. Is that a fair statement?
>
> A Yes.
>
> Q And are these the same activities . . . that the North Athletic Complex is now being used for?
>
> A Yes.
>
> Q Okay. Would you agree that turfing the entire field of the North Athletic Complex has allowed Vianney students more time on that field because you can use it even after it rains, gets muddy, that sort of thing?
>
> A Yes.
>
> Q So Vianney's teams are actually using this field ***more than they have historically before the renovations***.
>
> A ***Yes***.

(Exhibit 2, De Phillips Dep. 13:11–14:5 (emphasis added).)

40. When asked whether Vianney needed the full, requested lighting level (70/50) to "fulfill [Vianney's] religious mission," Vianney's CFO responded: "Well, I don't know if that's true. I, I don't know if that's the level that says you have to have that level to fulfill your religious -- no, that's, that's ridiculous." (Exhibit 2, De Phillips Dep. 85:16–21.)

41. Vianney's CFO also testified that the Lighting Regulations were just limiting the scale and extent of Vianney's use of the north field, but did not *reduce* the amount of time Vianney could use the field:

> Q (By Ms. Milunski) So Kirkwood's lighting restrictions really ***just limit the scale and the extent*** of what Vianney is able to use the field for; is that correct?
>
> A ***That's correct.***
>
> Q So compared with Vianney's historical use of the North Athletic Complex for the last 50-plus years, the enforcement of Kirkwood's lighting code is ***not reducing the amount of time Vianney is using the field***; right?
>
> A That's correct.

(Exhibit 2, De Phillips Dep. 15:7–17 (emphasis added).)

42. Vianney's CFO also testified that prior to June 23, 2015, the lights were not "religiously essential":

> Q There was some question as to whether the lights were going to be permitted at all prior to June 23rd, 2015; right?
>
> A Uh-huh.
>
> Q And the school certainly planned to move forward with the renovations of the North Athletic Complex, regardless of whether you were going to be able to put lights up; right?
>
> A That's correct.
>
> Q And it knew that there was a possibility at least that it could not put lights up on that field.
>
> A Yes.
>
> Q So would you say that it became, the lights became economically and religiously essential on June 23rd, 2015, when, when you were told that you could do it?
>
> A Right.

(Exhibit 2, De Phillips Dep. 83:12–84:3.)

**<u>Vianney's Understanding of Kirkwood's Code</u>**

43. Vianney's CFO testified that the Lighting Regulations apply to both religious and secular schools and Kirkwood was not enforcing the Zoning Code *because of* Vianney's religious affiliation:

> Q Do you believe that the City of Kirkwood is applying the code to Vianney because of its religious affiliation? I'll stop there.
>
> A I mean I, I'm going to say they're not applying a code just because of our religious affiliation.
>
> Q Because you'd agree that it applies to both secular and religious schools; right?
>
> A It does.

(<u>Exhibit 2</u>, De Phillips Dep. 78:4–12.)

44. Vianney's President and CFO testified that any restrictions on the north field lighting could violate its religious beliefs and that, as a religious school, it should be exempt from the Kirkwood Zoning Code because Vianney's mission is "interwoven in to what we do, and all that we do is part of our mission" (<u>Exhibit 1</u>, Loyet Dep. 65:1–8):

> Q Would it be your claim that your religious beliefs are violated if you cannot use the property 24 hours a day?
>
> A Could be.
>
> Q In other words, would, would it be your opinion that your religious beliefs are violated if you could not play baseball on the field at two in the morning?
>
> A Could be.

(<u>Exhibit 1</u>, Loyet Dep. 57:10–18.)

> Q As a general proposition, would you agree that the Kirkwood code of ordinances, including the zoning ordinances, apply to Vianney?
>
> A Don't know if I would agree with that totally.
>
> Q Why would you not agree with it? Do you think that . . . because you're a religious school you're exempt . . . from zoning ordinances?

A Yeah, I would agree with that.

(Exhibit 2, De Phillips Dep. 79:22–80:9.)

45. Although Mike Loyet, Vianney's President, now states that the lights are essential to fulfilling Vianney's religious mission, he did not tell his contractors, Jacob Buening, George Stock, or Todd Stych, Vianney's CFO Wendell De Phillips, or even the Board of Adjustments when applying for a variance, that the lights were essential to Vianney's religious mission until the instigation of this lawsuit. (Exhibit 22, Buening Dep. 18:24–19:2, 25:11–14; Exhibit 21, Stock Dep. 36:6–12, 109:3–7, 177:9–14; Exhibit 23, Stych Dep. 34:3–13; Exhibit 2, De Phillips Dep. 47:13–16, 49:3–9; Exhibit 16, Dep. Ex. 42, at KWD_002569–71.)

**Harm to the Neighbors**

46. Vianney's neighbors raised both aesthetic and health concerns regarding Vianney's proposed use of the newly installed lights and sound system for the north field because the installed 80-foot high lighting and sound system are directed at the neighboring residences. (*E.g.*, Exhibit 8, Dec. 5, 2016 Tr. 15:16–16:15; 60:8–61:1; Exhibit 30, Dep. Ex. 60.)

47. As the hours of testimony from neighboring residents made quite clear during the Board of Adjustment hearings held to consider Vianney's request for a variance from the Lighting Regulations, the lights and sound use proposed by Vianney would disturb their sleep and could create other negative health impacts. (*E.g.*, *id.*; Exhibit 2, De Phillips Dep. 64:21–65:6; Exhibit 23, Stych Dep. 92:18–25; *see generally* Exhibit 27, Nov. 14, 2016 Tr.; Exhibit 31, Nov. 28, 2016 Tr.; Exhibit 8, Dec. 5, 2016 Tr.)

48. One resident directly adjacent to the baseball field testified during the Board of Adjustment hearings that higher nighttime lighting levels could cause increased headaches, fatigue, anxiety, and even the risk of cancer. (Exhibit 8, Dec. 5, 2016 Tr. 11:10–13, 15:16–16:15.)

**Vianney's Sound System**

49. Kirkwood's Planning and Zoning Commission imposed the following conditions on Vianney's use of its new sound system on the north field:

> ***The speakers and sound system*** may be used not more than 30 minutes prior to a scheduled athletic event and shall be limited to the playing of the national anthem, general pre-game announcements, such as for team lineups, and in no event shall ***the sound system*** be utilized for the playing of music, play-by-play announcing, or athletic practices. In addition ***the sound system*** can only be used between the hours of 7:00 a.m. and 10:00 p.m. August 16th – May 31st. Any future alterations to the sound system, including design, layout and placement of sound system elements, must be approved by the City.

(Exhibit 32, KWD_002200–18, at KWD_002204.)

50. Vianney's President could not recall whether Vianney used the old sound system for prayer on its north field. (Exhibit 1, Loyet Dep. 37:13–14, 38:16–20, 40:7–10.)

51. When walk-up music was played through Vianney's old sound system, the students chose rap, country, modern, or pop music, but Vianney could not recall a student *ever* choosing religious music for a walk-up song. (Exhibit 2, De Phillips Dep. 18:20–19:3.)

52. Vianney can join in song or otherwise play music on the baseball field as long as it is not amplified through the sound system. (Exhibit 1, Loyet Dep. 62:19–24.)

53. Vianney's President admitted that they could go out amongst the crowd and join in prayer. (Exhibit 1, Loyet Dep. 61:25–62:8.)

**The Kirkwood School District**

54. Kirkwood High School is a Missouri public high school, owned and run by the Kirkwood School District, a public governmental body. (Exhibit 33, Romay Dep. 19:17–23, 104:12–14, Sept. 20, 2017; *see also* Exhibit 5, Bensing Dep. 36:15–20.)

55. Kirkwood High School has had lights in its football/soccer stadium for decades. (Exhibit 33, Romay Dep. 95:23–96:10.)

56. Kirkwood High School updated the lights in its football/soccer stadium as part of renovations to that field completed in 2010. (Exhibit 33, Romay Dep. 19:6–9, 38:23–40:1.)

57. Both Kirkwood High School and Vianney have a football/soccer stadium with lights and a sound system. (Exhibit 1, Loyet Dep. 301:10–18; Exhibit 2, De Phillips Dep. 17:2–9; Exhibit 3, Dep. Ex. 54, at 10.)

58. During the hearings on Vianney's variance application to be allowed to use the lights in excess of the Lighting Regulations, Plaintiffs' counsel testified that "public schools aren't subject to zoning regulations and they can have lighting however they want . . . ." (Exhibit 27, Nov. 14, 2016 Tr. 36:15–17; *see also id.* 29:3–11 (showing that the testimony is provided by Stephen Kling as representative for Vianney).)

59. Kirkwood High School does not have any lighting on its baseball field. (Exhibit 33, Romay Dep. 8:25–9:2, 62:6–8; Exhibit 1, Loyet Dep. 107:8–14.)

60. Plaintiffs do not have any evidence that the lights at Kirkwood High School's football/soccer field exceed Kirkwood's current Lighting Regulations. (Exhibit 1, Loyet Dep. 118:5–25.)

61. The lighting company that installed the lights on Kirkwood High School's football/soccer field warrantied that there would be no light trespass beyond the complex's perimeter fence line. (Exhibit 33, Romay Dep. 99:6–11, 100:8–22; Exhibit 34, Dep. Ex. 14, at KSD_0020.)

Respectfully submitted,

**LEWIS RICE LLC**

By: /s/ John M. Hessel
John M. Hessel, #26408MO
Joseph E. Martineau, #32397MO
Sarah A. Milunski, #65112MO
600 Washington Avenue, Suite 2500
St. Louis, Missouri 63101
Telephone: 314-444-7600
Fax: 314-241-6056
Email: jhessel@lewisrice.com
jmartineau@lewisrice.com
smilunski@lewisrice.com

*Attorneys for Defendants*

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that a true and correct copy of the foregoing were served via electronic mail to the following parties on this 15th day of March, 2018:

Ronald E. Jenkins
Stephen L. Kling, Jr.
Michael P. Stephens
**JENKINS & KLING, P.C.**
150 North Meramec Ave., Ste 400
St. Louis, Missouri 63105
rjenkins@jenkinskling.com
skling@jenkinskling.com
mstephens@jenkinskling.com

*Lead Attorneys for Plaintiff*

Portia C. Kayser
**FISHER PATTERSON SAYLER & SMITH, L.L.P.**
1010 Market Street, Suite 1650
St. Louis, Missouri 63101
pkayser@fisherpatterson.com

*Co-counsel for Defendant and Respondent*

Daniel P. Dalton
**DALTON & TOMICH, PLC**
The Chrysler House
719 Griswold Street, Suite 270
Detroit, MI 48226
Tel. (313) 859-6000
ddalton@daltontomich.com

*Attorney for Plaintiff as to the RLUIPA and Constitutional Claims, only*

/s/ John M. Hessel