|  |  |  |
|---|---|---|
| MARIANIST PROVINCE OF THE UNITED STATES and ST. JOHN VIANNEY HIGH SCHOOL, INC., | ) ) ) ) | |
| Plaintiffs, | ) ) | No. 4:17-CV-805 RLW |
| v. | ) ) ) | |
| CITY OF KIRKWOOD, | ) ) | |
| Defendant, | ) ) | |
| and | ) ) | |
| BOARD OF ADJUSTMENT OF THE CITY OF KIRKWOOD, | ) ) ) | |
| Respondent. | ) ) | |

## MEMORANDUM AND ORDER

This matter is before the court on Plaintiffs' Motion for Partial Summary Judgment Pursuant to Fed. R.Civ. P. 56(C) (ECF No. 58), Plaintiff's Request for Certiorari Reversing the Board of Adjustment's Variance Denial, and Defendants' Cross-Motion for Partial Summary Judgment (ECF No. 72). These matters are fully briefed and ready for disposition.

## BACKGROUND

Vianney is an all-male Marianist high school, which has been located in the City of Kirkwood ("the City") since 1960. (Defendants' Statement of Undisputed Material Facts ("DSUMF"), ECF No. 74, ¶1). Vianney is located at 1311 South Kirkwood Road, Kirkwood, Missouri (the "Property"). (Plaintiffs' Statement of Uncontroverted Material Facts ("PSUMF"), ECF No. 58-2, ¶8). Marianist Province owns the Property and Vianney is the leaseholder

pursuant to a long-term lease. (PSUMF, ¶7). According to its Mission Statement, Vianney "is dedicated to forming young men for spiritual, academic and personal excellence in the Catholic, Marianist tradition." (PSUMF, ¶4). Vianney has been located at the Property for approximately 56 years. (PSUMF, ¶9).

The Property consists of approximately 37 acres that is used as a school campus, including school buildings, a track, an outdoor football and soccer stadium, a sports field, and a cemetery for the professed Marianist Priests and Brothers. (PSUMF, ¶10). An approximately 4.5 acre parcel at the north end of the Property is used for the sports field, which has primarily been used for baseball (the "Sports Field Property"). (PSUMF, ¶11; DSUMF, ¶3). Vianney has used its Sports Field Property and played baseball and other sports on that field without lights for over fifty-seven years. (DSUMF, ¶4). The west and northwest sides of the Sports Field Property is bordered by residential homes. (DSUMF, ¶5). Vianney has a turfed football, soccer, and track facility on the south side of its campus that has lights and a sound system, which Vianney operates without any restrictions from the City. (DSUMF, ¶6). The lights for Vianney's football/soccer facility were installed prior to 2012. (DSUMF, ¶7).

Prior to 2012, Kirkwood's Zoning Code did not contain any lighting regulations. (DSUMF, ¶8). In November 2012, Kirkwood adopted a revised Zoning Code that included lighting regulations limiting the height of all pole-mounted lighting fixtures for outdoor sports activities and play fields to 80 feet and limiting the maximum illumination level of light cast off-site onto adjoining residential properties to less than or equal to 0.1 footcandles ("Lighting Regulations"). (DSUMF, ¶9). The stated "Purpose" of the Lighting Regulations is "to strike a balance of safety and aesthetics by providing lighting regulations that protect drivers and pedestrians from glare and reduce to reasonable limits the trespass of artificial lighting onto

- 2 -

neighboring properties and public or private rights of way." (DSUMF, ¶10). The Lighting Regulations have higher maximum illumination levels for properties adjacent to commercial non-residential properties than for those adjacent to single-family residential uses. (DSUMF, ¶12). The current Lighting Regulations provide in relevant part: "The maximum illumination level of light cast off-site onto properties with single-family residential uses shall be less than or equal to 0.1 footcandles (fc) at finished grade" (hereinafter "Maximum Illumination") (DSUMF, ¶13). Section 17-36 of the City's Sound Regulations states that "[i]t shall be unlawful for any person to make, continue, or cause to be made or continued any loud, unnecessary or unusual noise or any noise which unreasonably or unnecessarily either annoys, disturbs, injures or endangers the comfort, repose, health, peace or safety of others in the city." (PSUMF, ¶26).

In late 2014 and early 2015, Vianney decided to renovate its Sports Field Property. (DSUMF, ¶15). Vianney desired to put lights on the North Sports Field as part of its renovations. (DSUMF, ¶16). In early 2015, Vianney's contractors told Vianney that there was no lighting configuration that would both comply with the Lighting Regulations and allow baseball to be played safely at night. (DSUMF, ¶21). On or about June 19, 2015, Vianney submitted a variance application to the City that requested the ability to use lights at the Sports Field Property that exceed the 0.1 footcandle requirement in the Zoning Code ("Original Variance Application"). (PSUMF, ¶37). Vianney then sought a variance from the Kirkwood Board of Adjustment. (DSUMF, ¶22). In Vianney's June 2015 variance application, Vianney President Mike Loyet stated that Vianney wanted to light the field "to practice and compete" in sporting events. (DSUMF, ¶25). Kirkwood's former City Planner, Ryan Spencer, determined a variance was not required based on his belief that there were already lights on the Sports Field Property and that the existing non-conforming existing lights would be improved by the

proposed lighting. (DSUMF, ¶26). Spencer contacted Vianney's engineers and told them that a variance was not required because "a currently, non-conforming situation is being less non-conforming." (DSUMF, ¶28; PSUMF, ¶40). Spencer's belief that there were already lights on the Sports Field Property was incorrect because there had never been lights on that field. (DSUMF, ¶27). Shortly after the June 23 email was received, Vianney President Michael Loyet spoke with City Attorney John Hessell, who also informed Mr. Loyet that the situation underlying the Original Variance Application did not fall under the City's normal variance process and that Vianney could proceed with installation of the lights. (PSUMF, ¶42). In early October 2015, Vianney submitted the 2015 Lighting Plan a second time (the first being early June 2015) prepared by Musco to the City Public Works Department. (PSUMF, ¶44). On October 14, 2015, Vianney submitted a site plan relating to the improvements to the Sports Field Property to the City's Planning and Zoning Commission. (PSUMF, ¶45). On October 15, 2015, once approving the site plan, the City issued a building permit ("Building Permit") to Vianney authorizing the construction of "Ball Field Dugouts & Light Standards" on the Sports Field Property. (PSUMF, ¶46). Vianney then moved forward with the project on the Sports Field Property and installed lights at a cost of $235,000. (DSUMF, ¶29; PSUMF, ¶48). After the lights were installed, the City received complaints regarding the lights from residents of the neighborhood bordering the Sports Field Property. On February 16, 2016, President Loyet received a letter, dated February 11, 2016, from the City's Public Works Director, informing Vianney was "not permitted to use the lights or the audio system, except for testing purposes, until the site plan review process has been fully completed." (PSUMF, ¶61).

Vianney submitted a site plan, which the City approved in September 2016, subject to several conditions that severely restricted the use of the light and sound systems. (PSUMF, ¶¶68-

70).[1] Vianney submitted a variance request to Kirkwood for limited use of the lighting and sound systems. (PSUMF, ¶71). Vianney voluntarily agreed to several variance conditions (the "Self-Imposed Restrictions") that restricted use of the light and sound systems. (PSUMF, ¶76):

a. During the periods of November 15 through March 14 and June 1 to August 31 of each calendar year, the lights shall not be turned on at any time;

b. Lights shall not be turned on any Sunday during the entire calendar year;

c. During the periods of March 15 to May 31 and September 1 to November 14 of each year, the lights shall be completely turned off no later than 9:00 p.m., except: (i) one light standard shall be permitted to remain turned on for a reasonable time thereafter to allow for the safe exit of players and visitors, and (ii) Vianney shall be granted (10) exceptions during the period of use to extend the light usage until 10:00 p.m. in circumstances of a late start, inclement weather delay, or other unforeseen acts of God, unsafe conditions or unique situations;

d. Use of the sounds system shall comply with Section 17-36 of the City Code of Ordinances. The sound system shall not be used later than 9:00 p.m., except that Vianney shall be granted (10) exceptions during the period of use to extend the sound system usage until 10:00 p.m. in circumstances of a late start, inclement weather delay, or other unforeseen acts of God, unsafe conditions or unique situations. No music shall be played after 7:15 p.m., except that the National Anthem shall be permitted to be played on the sound systems at the beginning of games commencing after such time;

e. Vianney shall utilize a maximum of four (4) speakers (reduced from an available six (6) speakers);

f. Vianney is willing to lower the location of the speakers on the poles on which they are mounted if requested by the City or neighboring property owners;

g. Vianney shall use all reasonable effort to encourage visitors not to park on the neighboring streets located on Geyer Forest, Forest Glen, and Oakshire Estates Subdivisions and not to utilize such subdivisions as a means to access the Vianney field; and

h. For the few properties for which lighting at the property line exceeds 0.1 footcandles (fc) at finished grade, Vianney shall provide a one-time allowance of $2,000.00 to provide for additional landscaping on the affected property owner's property, the type and placement of which shall be reasonably requested by the Owner and for blinds, awnings and window treatments.

Vianney's neighbors raised aesthetic and health concerns regarding Vianney's purposed use of the newly installed lights and sound system for the Sports Field Property. (DSUMF, ¶46). During the Board of Adjustment hearings, neighbors claimed that the lights and sound use

---

[1] In Vianney's opinion, the conditions imposed "deny all meaningful use of the Lights and Sound System. (PSUMF, ¶70).

proposed by Vianney would disturb their sleep and have other negative health impacts. (DSUMF, ¶47). The Kirkwood Board of Adjustment unanimously voted to deny the Variance. (PSUMF, ¶82).

Kirkwood High School ("Kirkwood HS") is a Missouri public school located at 801 W. Essex Avenue, Kirkwood, Missouri 63122, owned and operated by the Kirkwood School District, a public government body. (DSUMF, ¶54; PSUMF, ¶91). Kirkwood HS has had lights in its football/soccer stadium for decades. (DSUMF, ¶55). Kirkwood HS updated the lights in its football/soccer stadium as part of renovations to that field in 2010. (DSUMF, ¶56; PSUMF, ¶94). Thus, both Kirkwood HS and Vianney have a football/soccer stadium with lights and a sound system. (DSUMF, ¶57). Kirkwood HS does not have any lighting on its baseball field. (DSUMF, ¶59). However, both the baseball and the softball field have permanently affixed speakers that hook up to a portable sound system. (PSUMF, ¶101). The lighting company that installed the lights on Kirkwood HS's football/soccer field warrantied that there would be no light trespass beyond the complex's perimeter fence line. (DSUMF, ¶61).

Vianney filed a six count complaint in this Court. Both sides have moved for summary judgment, and Vianney requested a writ of certiorari reversing the Board of Adjustment's denial of Vianney's variance application. The Court grants summary judgment in full and denies the writ of certiorari.

## I.  Motions for Summary Judgment

### A. Standard for Motion for Summary Judgment

The Court may grant a motion for summary judgment if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment

as a matter of law." Fed. R. Civ. P. 56(c); *Celotex Corp. v. Citrate*, 477 U.S. 317, 322 (1986); *Torgerson v. City of Rochester*, 643 F.3d 1031, 1042 (8th Cir. 2011). The substantive law determines which facts are critical and which are irrelevant. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Only disputes over facts that might affect the outcome will properly preclude summary judgment. *Id.* Summary judgment is not proper if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Id.*

A moving party always bears the burden of informing the Court of the basis of its motion. *Celotex Corp.*, 477 U.S. at 323. Once the moving party discharges this burden, the nonmoving party must set forth specific facts demonstrating that there is a dispute as to a genuine issue of material fact, not the "mere existence of some alleged factual dispute." Fed. R. Civ. P. 56(e); *Anderson*, 477 U.S. at 248. The nonmoving party may not rest upon mere allegations or denials of his pleading. *Id.*

In passing on a motion for summary judgment, the Court must view the facts in the light most favorable to the nonmoving party, and all justifiable inferences are to be drawn in his favor. *Celotex Corp.*, 477 U.S. at 331. The Court's function is not to weigh the evidence but to determine whether there is a genuine issue for trial. *Anderson*, 477 U.S. at 249. "'Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge.'" *Torgerson*, 643 F.3d at 1042 (quoting *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000)).

**B. Discussion**

**1. Count III—Equal Terms Claim Under the Religious Land Use and Institutionalized Persons Act ("RLUIPA")[2]**

Vianney brings its claim in Count III under RLUIPA's equal terms provision, 42 U.S.C. §2000cc(b)(1): "No government shall impose or implement a land use regulation in a manner that treats a religious assembly or institution on less than equal terms with a nonreligious assembly or institution." Under most circuit law, "a RLUIPA equal terms violation requires proof that the plaintiff has been treated less well than a similarly situated secular comparator." *Signs for Jesus v. Town of Pembroke, NH*, 230 F. Supp. 3d 49, 67 (D.N.H. 2017). (citing *Tree of Life Christian Schools v. City of Upper Arlington*, 823 F.3d 365, 370 (6th Cir. 2016) (collecting cases)); *see also Lighthouse Inst. for Evangelism, Inc. v. City of Long Branch*,

---

[2] Religious assemblies, especially, new, small, or unfamiliar ones, may be illegally discriminated against on the face of zoning codes and also in the highly individualized and discretionary processes of land use regulation. Zoning codes and landmarking laws may illegally exclude religious assemblies in places where they permit theaters, meeting halls, and other places where large groups of people assemble for secular purposes. Or the zoning codes or landmarking laws may permit religious assemblies only with individualized permission from the zoning board or landmarking commission, and zoning boards or landmarking commission may use that authority in illegally discriminatory ways.

To address these concerns, RLUIPA prohibits zoning and landmarking laws that substantially burden the religious exercise of churches or other religious assemblies or institutions absent the least restrictive means of furthering a compelling governmental interest. This prohibition applies in any situation where: (i) the state or local government entity imposing the substantial burden receives federal funding; (ii) the substantial burden affects, or removal of the substantial burden would affect, interstate commerce; or (iii) the substantial burden arises from the state or local government's formal or informal procedures for making individualized assessments of a property's uses. In addition, RLUIPA prohibits zoning and landmarking laws that:

(1) treat churches or other religious assemblies or institutions on less than equal terms with nonreligious institutions;

(2) discriminate against any assemblies or institutions on the basis of religion or religious denomination;

(3) totally exclude religious assemblies from a jurisdiction; or

(4) unreasonably limit religious assemblies, institutions, or structures within a jurisdiction.

510 F.3d 253, 264 (3d Cir. 2007) ("what the Equal Terms provision does in fact require is a secular comparator that is similarly situated as to the regulatory purpose of the regulation in question—similar to First Amendment Free Exercise jurisprudence"); *River of Life Kingdom Ministries v. Vill. of Hazel Crest, Ill.*, 611 F.3d 367, 371 (7th Cir. 2010) (problems with the Third Circuit's test "can be solved by a shift of focus from regulatory *purpose* to accepted zoning *criteria*"); *Third Church of Christ, Scientist, of N.Y. City v. City of New York*, 626 F.3d 667, 669 (2d Cir. 2010) ("Determining whether a municipality has treated a religious entity 'on less than equal terms' requires a comparison between that religious entity and a secular one." ). However, these "differences in the mechanism for selecting an appropriate secular comparator" are largely semantical and do not affect this Court's analysis, particularly because both sides analyzed Kirkwood HS as a comparator. *Third Church of Christ, Scientist, of New York City v. City of New York*, 626 F.3d 667, 670 (2d Cir. 2010).

There are four elements of an Equal Terms violation: (1) the plaintiff must be a religious assembly or institution, (2) subject to a land use regulation, that (3) treats the religious assembly on less than equal terms, with (4) a nonreligious assembly or institution. 42 U.S.C. § 2000cc(b)(1); *Primera Iglesia Bautista Hispana of Boca Raton, Inc. v. Broward Cty.*, 450 F.3d 1295, 1307–08 (11th Cir. 2006). Having the first three elements undisputed, the issue before this Court is whether City's implementation of the land use regulation was on less than equal terms with a nonreligious assembly or institution. *Primera Iglesia Bautista Hispana of Boca Raton, Inc.*, 450 F.3d at 1307. Under an "as applied challenge," "a neutral statute's *application* may violate the Equal Terms provision if it differentially treats *similarly situated* religious and nonreligious assemblies." *Primera Iglesia Bautista Hispana of Boca Raton, Inc.*, 450 F.3d at 1311.

As stated, Vianney analyzes Kirkwood HS as a proposed comparator as part of its "as applied challenge" under RLUIPA. (ECF No. 58-1 at 14-15). Vianney claims that both schools

are in the R-3 single-family residential zoning district. Vianney asserts that the City "forced it to go through Site Plan approval and apply for a Variance to operate its Lights and Sound System as intended, despite having previously stated 'a variance is not required' and Vianney could 'proceed forward with the project.'" (ECF No. 58-1 at 15). The City also issued a Building Permit. Vianney claims that it relied on these authorizations when it purchased $235,000 worth of Lights. Vianney states that the City then refused to allow Vianney to use the Lights and Sound System. Vianney claims that the Planning and Zoning Commission imposed Site Plan Conditions that prevented any meaningful use of the Sound System and Lights. (ECF No. 58-1 at 16).

Vianney complains that the City allowed Kirkwood HS, also in the R-3 single-family residential zoning district, to use lights and a sound system at its outdoor athletic complex without restrictions or conditions. (ECF No. 58-1 at 16). Vianney states that it has been treated differently because it provides educational services that are "inherently religious." (ECF No. 58-1 at 16). Vianney notes that Kirkwood HS did not have to go through any site plan approvals or variances and has not been subject to any restrictions on turning off its lights or sound system. (ECF No. 58-1 at 16-17).

The Court holds that Kirkwood HS is not a valid comparator for purposes of Vianney's equal terms claim under RLUIPA. First, the Court notes that Kirkwood HS was not subject to the same process for obtaining lights because the Kirkwood Zoning Code did not have any lighting regulations or illumination limitations before 2012. (DSUMF, ¶¶8-9). Thus, the lights at Kirkwood HS are a pre-existing use, similar to the lights on Vianney's football/soccer field. In contrast, the lights on Vianney's Sports Field Property were installed after 2012 and, therefore, subject to Kirkwood's Lighting Regulations and illumination limitations. The Court finds,

therefore, that Kirkwood HS and Vianney are not valid comparators because they were treated differently based upon the regulations that were applicable during the lighting installation, not religious affiliation. *See Signs for Jesus v. Town of Pembroke, NH*, 230 F. Supp. 3d 49, 67 (D.N.H. 2017) ("The Church is ineligible for grandfathering based on chronology, not religious identity."); *Vision Church v. Village of Long Grove*, 468 F.3d 975, 1003 (7th Cir. 2006) (finding comparators invalid where they were "subject to different standards because of the year" in which they sought permit).[3]

In addition, the Court holds that Kirkwood HS is not a valid comparator because it is a public, not private, high school. *See Normandy Sch. Dist. v. City of Pasadena Hills*, 70 S.W.3d 488, 494 (Mo. Ct. App. 2002) (quoting *City of Kirkwood v. City of Sunset Hills*, 589 S.W.2d 31, 36 (Mo. Ct. App. 1979) ("City's authority under the zoning code cannot extend to 'restrict or limit the use of public property for public purposes.'"). Missouri law has carefully delineated the power that cities can have over regulation of public schools. Cities may exercise police power over "certain aspects of the operation of public school facilities" but "the power of cities to regulate structural and architectural designs of buildings under the Zoning Enabling Act, sections 89.010 *et seq*, is limited to 'buildings, structures and land for trade, industry, residence or other purposes.'" *Normandy Sch. Dist.*, 70 S.W.3d at 494 (quoting *City of Sunset Hills,* 589 S.W.2d at 36).

---

[3] Although Vianney relies heavily on *Corp. of the Catholic Archbishop of Seattle v. City of Seattle*, 28 F. Supp. 3d 1163 (W.D. Wash. 2014) to support its claim that the City violated RLUIPA by forcing Vianney to go through different processes than the City of required Kirkwood HS (ECF Nos. 58-1 at 18-19), the Court notes that the *Corp. of the Catholic Archbishop of Seattle* did not involve any assertion that structures had been grandfathered in prior to the building of other structures, as is clearly present in this case. Thus, the Court holds that the reasoning of *Corp. of the Catholic Archbishop of Seattle* is inapplicable to this Court's decision.

Finally, the Court holds that Vianney has failed to demonstrate that it was treated less favorably than Kirkwood HS. Both Kirkwood HS and Vianney have a football/soccer stadium with lights and a sound system.[4] Vianney also has not presented any evidence that the lights at Kirkwood HS's football/soccer field exceed Kirkwood's current Lighting Regulations. *See* DSUMF, ¶¶8-9, 55-56, 60.[5] In addition, Kirkwood HS does not have lights on their baseball field. (DSUMF, ¶59).[6] Therefore, the Court holds that Vianney has not shown that it has been treated less well because it is a religious institution, which is required for an equal terms claim under RLUIPA. 42 U.S.C. § 2000cc(b)(1).

Because Vianney has failed to provide a valid comparator and because it has not shown it has been treated less favorably, the Court holds that Vianney's equal terms claim under RLUIPA fails as a matter of law.

### 2. Count IV—Substantial Burden Claim under RLUIPA

Vianney claims that Kirkwood has imposed a substantial burden on its use of its land in violation of RLUIPA. Under 42 U.S.C. §2000cc(a)(1),

> No government shall impose or implement a land use regulation in a manner that imposes a substantial burden on the religious exercise of a person, including a religious assembly or institution, unless the government demonstrates that imposition of the burden on that person, assembly, or institution—
> > (A) is in furtherance of a compelling governmental interest; and
> > (B) is the least restrictive means of furthering that compelling governmental interest.

"RLUIPA goes on to state that the Act's aim of protecting religious exercise is to be construed broadly and 'to the maximum extent permitted by the terms of this chapter and the

---

[4] Notably, both systems were enacted prior to 2012.

[5] The lighting company that installed the lights on Kirkwood HS's football/soccer field warrantied that there would be no light trespass beyond the complex's perimeter fence line. (DSUMF, ¶61).

[6] As discussed, Vianney has lights on its baseball field, but the use of the lights is extremely limited due to the constraints of the Lighting Regulations.

Constitution."' *Westchester Day Sch. v. Vill. of Mamaroneck*, 504 F.3d 338, 347 (2d Cir. 2007) (quoting § 2000cc–3(g)). Although the Eighth Circuit has not yet defined "substantial burden" in the land use context, the Court applies the "substantial burden" standard from RLUIPA prison cases to this action:[7]

> [T]o demonstrate a substantial burden on the exercise of religion, a government policy or action must significantly inhibit or constrain [religious] conduct or [religious] expression ...; must meaningfully curtail a person's ability to express adherence to his or her faith; or must deny a person reasonable opportunities to engage in those activities that are fundamental to a person's religion.

*Van Wyhe v. Reisch*, 581 F.3d 639, 656 (8th Cir. 2009)(internal quotations omitted); *see, e.g., Lovelace v. Lee,* 472 F.3d 174, 187 (4th Cir. 2006) (For RLUIPA purposes, a substantial burden is something that "puts substantial pressure on an adherent to modify his behavior."); *Midrash Sephardi,* 366 F.3d at 1227 ("[A] substantial burden is akin to significant pressure which directly coerces the religious adherent to conform his or her behavior accordingly."). "Under RLUIPA, once a religious institution has demonstrated that its religious exercise has been substantially burdened, the burden of proof shifts to the municipality to prove it acted in furtherance of a compelling governmental interest and that its action is the least restrictive means of furthering that interest." *Westchester Day Sch. v. Vill. of Mamaroneck*, 504 F.3d 338, 353 (2d Cir. 2007) (citing § 2000cc–2(b)). Compelling state interests are "interests of

---

[7] 42 U.S.C. §2000c-1 provides the standard for prisoner religious rights under RLUIPA:
No government shall impose a substantial burden on the religious exercise of a person residing in or confined to an institution, as defined in section 1997 of this title, even if the burden results from a rule of general applicability, unless the government demonstrates that imposition of the burden on that person—
(1) is in furtherance of a compelling governmental interest; and
(2) is the least restrictive means of furthering that compelling governmental interest.

the highest order." *Church of the Lukumi Babalu Aye, Inc. v. City of Hialeah*, 508 U.S. 520, 546, 113 S.Ct. 2217, 124 L.Ed.2d 472 (1993).[8]

Vianney claims that its proposed use of the Sports Field Property is a "religious exercise." Vianney notes that it educates young men in the Catholic, Marianist tradition, and athletic activities are explicitly cited in two of the five educational characteristics that Marianist educational ministries pledge to uphold and promote in its educational institutions. (PSUMF, ¶5). Vianney asserts that its student athletes use the Sports Field Property to evangelize and share their Catholic, Marianist faith. (PSUMF, ¶12). Vianney claims that "there is no genuine issue Vianney's efforts to update the Sports Field Property in order to enhance its ability to evangelize and engage in religious fellowship, prayer and worship meets RLUIPA's definition of 'religious exercise.'" (ECF No. 58-1 at 6). Vianney further argues that "[b]ecause it cannot use the Lights at the Sports Field Property at a safe level of illumination as recommended by lighting engineers, Vianney is unable to accommodate the necessary practices and home games for participants in baseball and soccer programs." (PSUMF, ¶14-16). Vianney states that it is "unable to fully live out its mission of forming young men for spiritual, academic and personal excellence because its students do not have the necessary access to the Sports Field Property to participate in athletic and other events both during the day and into the night." (ECF No. 58-1 at

---

[8] *See San Jose Christian Coll. v. City of Morgan Hill*, 360 F.3d 1024, 1034–35 (9th Cir. 2004):

> Fusing the provisions of 42 U.S.C. § 2000cc(a)(1)(A)-(B), the statutory definition of "religious exercise" set forth in 42 U.S.C. § 2000cc–5(7)(A), and the plain meaning of "substantial burden" results in the following rule: the government is prohibited from imposing or implementing a land use regulation in a manner that imposes a "significantly great" restriction or onus on "any exercise of religion, whether or not compelled by, or central to, a system of religious belief" of a person, including a religious assembly or institution, unless the government can demonstrate that imposition of the burden on that person, assembly, or institution is: (1) in furtherance of a compelling governmental interest, and (2) the least restrictive means of furthering that compelling governmental interest.

- 14 -

9). As a result, Vianney claims that its students have had to modify their behavior and been unable to "participate in conduct motivated by their sincere religious beliefs." (ECF No. 58-1 at 9-10). Further, Vianney asserts that the City cannot demonstrate a compelling governmental interest in this case because two City officials (City Planner Ryan Spencer and City Attorney John Hessell) informed Vianney that it was permitted to install and use the Lights (PSUMF, ¶40-42), but later revoked that approval. (ECF No. 58-1 at 10-11). Vianney claims that the City demanded site plan review and subjected Vianney's Site Plan to "extremely restrictive" conditions even though the Planning and Zoning Commission outlined no compelling governmental interest. (ECF No. 58-1 at 11). ,Likewise, Vianney claims that the Board of Adjustment outlined no compelling governmental interest when it denied Vianney's request for a variance. (ECF No. 58-1 at 11). Vianney maintains that the City's general interest in protecting the health and safety of its residents is inadequate and the compelling interest must be particular to the case at hand. (ECF No. 58-1 at 11 (citing *Westchester Day Sch. v. Vill. of Mamaroneck*, 504 F.3d 338, 353 (2d Cir. 2007)). Finally, Vianney states that the City did not use the least restrictive means of furthering its interest. (ECF No. 58-1 at 11-12). Vianney notes that the City did not approve the proposed variance conditions or craft alternative variance conditions that would have addressed the neighbors' concerns and still allowed Vianney to utilize its light and sound systems. (ECF No. 58-1 at 12).

The Court holds that Vianney's substantial burden claim fails as a matter of law. The Court holds that Vianney has not demonstrated that its ability to use the lights and sound system constitute a "religious exercise" or that its inability to use the lights and sound system constitutes a "substantial burden" on its religious beliefs. Vianney has failed to demonstrate that it needs to use lights and a sound system as part of its religious exercise. In fact, when Vianney initially

applied for a variance in June 2015, Vianney's President, Mike Loyet stated that Vianney wanted to light its field "to practice and compete" in sporting events. (DSUMF, ¶25). *See Westchester Day Sch. v. Vill. of Mamaroneck*, 504 F.3d 338, 347 (2d Cir. 2007) ("For example, if a religious school wishes to build a gymnasium to be used exclusively for sporting activities, that kind of expansion would not constitute religious exercise [under RLUIPA]."). Likewise, Vianney's Interrogatory Answers state that its current and historic uses for the field is for non-religious purposes: (1) practices and games for Vianney's baseball teams, (2) practices for Vianney's soccer teams, (3) summer sports camps, (4) school day events such as "field days and emergency evacuation drills," and (5) use by third parties "for various athletic purposes." (DSUMF, ¶35). Contrary to Vianney's assertion, the Marianist mission does not mention "athletic" as a means of religious education. *See* https://www.vianney.com/about-vianney-marianist-heritage.html (last visited on August 23, 2018); *see also* ECF No. 73 at 23-24 (nothing that Vianney added "through athletics" to portions of its website about the Marianist mission).

Likewise, Vianney has not shown a substantial burden on its religious exercise. Vianney has been using the Sports Field Property without lights for more than half a century for baseball and soccer. The Court finds that the City has not substantially limited Vianney's ability to use the fields or caused Vianney to modify its use of the Field. Vianney has not demonstrated that it needs lights and a sound system to fulfill its religious mission or that its lack of lights and a sound system has in any way caused Vianney to modify its religious mission. Moreover, the Court holds that Vianney had a feasible alternative from which to carry on its religious mission, which is not inhibited by the City's regulations. *See Livingston Christian Sch. v. Genoa Charter Twp.*, 858 F.3d 996, 1004 (6th Cir. 2017) (citing *Westchester Day Sch. v. Vill. of Mamaroneck*, 504 F.3d 338, 352 (2d Cir. 2007) ("One factor … is whether the religious institution has a

feasible alternative location from which it can carry on its mission."). The Court holds that Vianney has an alternative because it is able to use the Sports Field Property, just not during the evening hours. Vianney has failed to show how allowing use of the Field only during daytime hours substantially limits its religious mission. In the alternative, Vianney has another lighted field available on its campus. The Court grants the City summary judgment on this issue because "the City's regulations in this case do not render religious exercise effectively impracticable." *San Jose Christian Coll. v. City of Morgan Hill*, 360 F.3d 1024, 1035 (9th Cir. 2004) (granting the city's motion for summary judgment on the RLUIPA claim where the "ordinance may have rendered College unable to provide education and/or worship at the Property, there is no evidence in the record demonstrating that College was precluded from using other sites within the city").

Finally, the Court holds that the City has a compelling Governmental interest in the safety of its residences and rights-of-ways and limiting the trespass of light. "It has long been recognized that 'local governments have a compelling interest in protecting the health and safety of their communities through the enforcement of the local zoning regulations.'" *Greater Bible Way Temple of Jackson v. City of Jackson*, 478 Mich. 373, 403, 733 N.W.2d 734, 751 (2007) (quoting *Murphy v. Zoning Comm. of the Town of New Milford*, 148 F.Supp.2d 173, 190 (D. Conn., 2001)). The City's position is supported by hours of testimony from neighboring residents regarding the detrimental health and aesthetic effects of the light and noise from the lighting and sound systems. (DSUMF, ¶¶47-48). Vianney has presented no evidence that these health and welfare concerns are unfounded or that they do not present a compelling interest.

**3. Count VI, 42 U.S.C. §1983**

Vianney also brings a free speech claim under §1983 based upon the Site Plan Conditions. The restrictions imposed by the Planning and Zoning Commission on Vianney are as follows:

> The speakers and sound system may be used not more than 30 minutes prior to a scheduled athletic event and shall be limited to the playing of the national anthem, general pre-game announcements, such as for team line-ups, and in no event shall the sound system be utilized for the playing of music, play-by-play announcing, or athletic practices. In addition the sound system can only be used between the hours of 7:00 a.m. and 10:00 p.m. August 16th –May 31st. Any future alterations to the sounds system, including design, layout and placement of sound system elements must be approved by the City.

(DSUMF, ¶49). Vianney argues that the Planning and Zoning Commission adopted Site Plan Conditions that target and severely restrict Vianney's ability to engage in religious speech at the Sports Field Property. Vianney notes that the Site Plan Conditions prohibit the playing of any music, including religious hymns or songs. Vianney contrasts that Kirkwood HS has no restrictions on its ability to play music or use lights. Vianney claims that there is no content-neutral explanation for this differential treatment. (ECF No. 58-1 at 22). Vianney argues that the Site Plan Conditions fail the strict scrutiny test. Vianney states there is "no compelling governmental interest to justify its plainly differential treatment of Vianney and Kirkwood HS." (ECF No. 58-1 at 23). Vianney argues that the Site Plan Conditions clearly are improper because they are not imposed on all schools in the R-3 residential zone. Further, Vianney maintains that the Site Plan Conditions are not narrowly tailored to further its interests without interfering with Vianney's First Amendment freedoms. (ECF No. 58-1 at 23-24). Vianney claims that the Site Plan Conditions target and eliminate more speech than necessary. Vianney claims that the Site Plan Conditions are not the least restrictive alternative because Kirkwood HS is allowed to operate a lights and sound system free from restriction. (ECF No. 58-1 at 24).

The Court holds that the Site Plan Conditions do not restrict Vianney's free speech rights. Vianney has only limited the amplified sound restriction. Vianney tries to morph this restriction into a constraint on religious music and hymns, but this restriction merely limits the noise levels for a sports field that is adjacent to residential homes. The Court holds that the City's regulation is also "narrowly tailored to serve a significant governmental interest." *Clark v. Cmty. for Creative Non-Violence*, 468 U.S. 288, 293, 104 S. Ct. 3065, 3069, 82 L. Ed. 2d 221 (1984). Government "ha[s] a substantial interest in protecting its citizens from unwelcome noise." *City Council of Los Angeles v. Taxpayers for Vincent,* 466 U.S. 789, 806, 104 S.Ct. 2118, 2129, 80 L.Ed.2d 772 (1984) (citations omitted); *Ward v. Rock Against Racism*, 491 U.S. 781, 796, 109 S. Ct. 2746, 2756, 105 L. Ed. 2d 661 (1989). "'The State's interest in protecting the well-being, tranquility, and privacy of the home is certainly of the highest order in a free and civilized society.'" *Frisby v. Schultz*, 487 U.S. 474, 484, 108 S. Ct. 2495, 2502, 101 L. Ed. 2d 420 (1988) (quoting *Carey v. Brown*, 447 U.S. 455, 471, 100 S. Ct. 2286, 2296, 65 L. Ed. 2d 263 (1980). Underlying the City policy is a purpose to bar generally the use of amplified sound so as to avoid interruption to and disruption to residents with homes that abut Vianney's Sports Field Property. This regulation serves a purpose unrelated to the content of expression and therefore is neutral even if it has an incidental effect on some speakers or messages but not others. The limited restriction on amplified speech required by the Site Plan Conditions is not comparable to an objectionable content-based restrictions. Thus, the Court holds that the ban on sound amplification at the Sports Field Property advances the City's substantial interest in protecting its citizens from unwelcome noise and does not violate the First Amendment.

**4. Count V-Missouri RFRA**

Missouri's Religious Freedom Restoration Act[9] provides:

> A governmental authority may not restrict a person's free exercise of religion, unless:
>
> (1) The restriction is in the form of a rule of general applicability, and does not discriminate against religion, or among religions; and
>
> (2) The governmental authority demonstrates that application of the restriction to the person is essential to further a compelling governmental interest, and is not unduly restrictive considering the relevant circumstances.

Mo. Rev. Stat. §1.302.1. The Court holds that Vianney's RFRA claim fails as a matter of law. First, the Lighting Regulations are rules of "general applicability" because they do not distinguish between secular and religious schools. Second, this Court has held that the City has a compelling government interest in protecting its residents from light and sound intrusion from the Sports Field Property. Finally, the Court holds that the Lighting Regulations are not "unduly restrictive" considering the adverse health and aesthetic effects of the lights on the neighboring residents. Therefore, the Court grants summary judgment in favor of the City on Vianney's RFRA claim.

### 5. Count II-Inverse Condemnation

Article I, §26 of the Missouri Constitution provides that "private property shall not be taken or damaged for public use without just compensation." In Count II, Vianney alleges a claim for inverse condemnation under Missouri's Constitution based upon the City's refusal to let Vianney use its lights and sound system. *See* ECF No. 26, ¶94 ("The foregoing actions of the

---

[9] Missouri's RFRA has not been interpreted by a Missouri appellate court. *See Doe v. Greitens*, 530 S.W.3d 571, 574 (Mo. Ct. App. 2017) (citing § 1.302.1) (To our knowledge, no Missouri state appellate court has interpreted or applied RFRA, which prohibits a government authority from restricting a person's free exercise of religion without a compelling interest.").

City constitute a wrongful appropriation of the Sports Field Property and a deprivation of Vianney's use of the Lights resulting in damage to Vianney.").

The Court holds that Vianney's inverse condemnation claim fails as a matter of law because the City's restrictions are a valid use of its police powers. "It has long been settled in this state that the valid exercise of the police power is not a taking of private property for public use." *City of Kansas City v. Tayler*, 689 S.W.2d 645, 646–47 (Mo. Ct. App. 1985) (citing *State ex rel. Doniphan Telephone Co. v. Public Service Commission*, 369 S.W.2d 572, 575[4, 5] (Mo. 1963)). In *Tayler*, the Missouri Court of Appeals held that the ordinance prohibiting livestock within 200 feet of the hearing portion of another's residence constituted a valid exercise of police power, which addressed the fly and odor problems associated with animals near residents. *Tayler*, 689 S.W.2d at 647. Likewise, this case involves the valid use of the City's police power to prevent light and sound trespass onto neighboring residential properties. The light and sound ordinances are for the benefit of the health and welfare of the Kirkwood citizens neighboring the Sports Field Property. Therefore, the Court holds that Vianney's inverse condemnation claim fails as a matter of law because it is based upon a valid exercise of the City's police power.

## II.    Writ of Certiorari

### A.  Standard for Writ of Certiorari

Section 89.110 provides the remedy for any person aggrieved by a decision of the board of adjustment, which is a petition for a writ of certiorari in the circuit court. *Duffner v. City of St. Peters*, 482 S.W.3d 811, 816–17 (Mo. Ct. App. 2016); Mo. Rev. Stat. §89.110 ("Any person or persons jointly or severally aggrieved by any decision of the board of adjustment ... may present to the circuit court of the county or city in which the property affected is located a petition, duly verified, setting forth that such decision is illegal, in whole or in part, specifying

the grounds of the illegality."). "Claims of illegality include claims that the Board's decision violates the Constitution." *Duffner v. City of St. Peters*, 482 S.W.3d 811, 820 (Mo. Ct. App. 2016). The scope of this judicial review of the decision of the board of adjustment in a zoning proceedings is limited to a determination of whether the decision is "authorized by law, and ... whether the [decision is] supported by competent and substantial evidence upon the whole record." *Antioch Cmty. Church v. Bd. of Zoning Adjustment of City of Kansas City*, 543 S.W.3d 28, 33–34 (Mo. 2018).

"The question whether the decision is authorized by law is a legal question this Court determines de novo." *Antioch Cmty. Church*, 543 S.W.3d at 34 (citing *State ex rel. Teefey v. Bd. of Zoning Adjustment of Kansas City*, 24 S.W.3d 681, 684 (Mo. banc 2000)). The reviewing court cannot substitute its own judgment on the evidence when it determines whether the decision is supported by competent and substantial evidence. *Mann v. Mann*, 239 S.W.2d 543, 544 (Mo. App. 1951). "During its review, the appellate court must determine whether the board's action is supported by competent and substantial evidence upon the whole record or whether it is arbitrary, capricious, unreasonable, unlawful, or in excess of its jurisdiction." *Baumer v. City of Jennings*, 247 S.W.3d 105, 111 (Mo. Ct. App. 2008). Rather, "an appellate court must view the evidence and reasonable inferences therefrom in a light most favorable to the decision." *Teefey,* 24 S.W.3d at 684. The party seeking the variance has the burden to demonstrate it should be granted. *Baumer,* 247 S.W.3d at 113-14; *USCOC of Greater Mo. v. City of Ferguson, Mo.,* 583 F.3d 1035, 1043 (8th Cir. 2009) (Missouri places the burden of demonstrating a practical difficulty on the party requesting the variance). "Only where the board exceeds its authority should the reviewing court hold the board's ruling to be illegal and void." *Baumer*, 247 S.W.3d at 111 (citing *Hutchens v. St. Louis County,* 848 S.W.2d 616, 617 (Mo. Ct. App. 1993)).

### B. Discussion

Vianney seeks an administrative review and reversal by certiorari of the Board of Adjustment's denial of a variance because it is not based upon substantial and competent evidence or in accordance with the City's Zoning Code, and as arbitrary, capricious, unreasonable, unlawful, or in excess of its jurisdiction.

Section 1110.3(3)(b) of the Kirkwood Zoning Code provides the applicable standard for granting a variance. The Board is authorized to grant a non-use variance only upon a finding that:

i. There are practical difficulties or unnecessary hardship in the way of carrying out the strict application of the Zoning Code;

ii. Granting the variance required would observe the spirit of the Code, secure public safety and welfare and do substantial justice; and

iii. The deviation from the strict application of the Zoning Code would be authorized by the area or non-use variance would not constitute a change in the district map, impair an adequate supply of light and air to adjacent property, increase congestion in public streets, increase the danger of fire, materially diminish or impair established property values within the surrounding area, and would not in any other respect impair the public health, safety, comfort, morals and welfare of the City of Kirkwood.

Further, under the Code, "[i]f an appeal for an area or non-use variance is granted, the Board shall grant the minimum variance necessary to allow the applicant reasonable use of his or her land."

Vianney claims the City produced "virtually no competent evidence" to support the Board's denial of the variance, that the Board's decision was arbitrary, capricious, and unreasonable and primarily based on vocal opposition of some neighboring residents who opposed the variance, and that Vianney produced a substantial and competent evidence to grant the variance. Vianney claims that its "substantial and competent evidence" includes that: (1)

Vianney constructed its sports field lights in good faith reliance on assurances and a building permit issued by City officials; (2) due to the topography, layout, and size of the school, practical difficulties exist for meeting the Maximum Illumination Level at residential properties lines; (3) the City's Lighting Regulations are unreasonable and excessively restrictive for sports field lighting and effectively prohibit use for official competitive sporting events; (4) Vianney has suffered or will suffer significant financial loss of no less than $235,000 and the lighting system effectively will be inversely condemned; (5) the November Light Plan and Self-Imposed Restrictions provide a reasonable use of the lights without creating a detriment to the residential neighboring properties; (6) the lights will not materially diminish or impair established property values of neighboring residential properties; and (7) substantial justice requires reasonable use of lights in accordance with the variance requested, including the Self-Imposed Restrictions, because it would result in improved conditions for the residents and allow Vianney a reasonable and meaningful use of the lights under the circumstances.

Essentially Vianney asserts practical difficulty based upon the estoppel effect of the errors of the City Planner (and possibly the City Attorney). Unfortunately for Vianney, "[e]stoppel does not apply to acts of government, including matters related to zoning." *State ex rel. Branum v. Bd. of Zoning Adjustment of City of Kansas City, Mo.*, 85 S.W.3d 35, 42 (Mo. Ct. App. 2002), *abrogated by Antioch Cmty. Church*, 543 S.W.3d 28; *Long v. Bd. of Adjustment of City of Columbia*, 856 S.W.2d 390, 393 (Mo. Ct. App. 1993) ("As a general proposition, estoppel does not apply to the acts of a government, *Bartlett & Company Grain v. Director of Revenue*, 649 S.W.2d 220, 224 (Mo.1983), including matters relating to zoning changes."); *Lichte v. Heidlage*, 536 S.W.2d 898, 901 (Mo. App. 1976) ("Estoppel is rooted in equitable principles and it would be unconscionable to hold that aggrieved private parties could be

prejudiced by the conduct of city officials with whom they were not in privity."); *State ex rel. Green's Bottom Sportsmen, Inc. v. St. Charles Cty. Bd. of Adjustment*, 553 S.W.2d 721, 726 (Mo. App. 1977) (citing *State ex rel. Walmar Investment Co. v. Mueller*, 512 S.W.2d 180, 184(4) (Mo.App.1974) ("The doctrine of estoppel is not generally applicable against a governmental body and if applied, it is done so only in exceptional circumstances and with great caution.").

It is lamentable that the City Planner (and allegedly the City Attorney) mistakenly informed Vianney that a variance was not needed for lights at the Sports Field Property, but that error does not create a practical difficulty. Although Vianney argues that the City cannot change the position set forth by the City Planner and relied upon by Vianney, the law does not permit estoppel on zoning requirements based upon the statements of the City Planner. *See State ex rel. Green's Bottom Sportsmen, Inc. v. St. Charles Cty. Bd. of Adjustment*, 553 S.W.2d 721, 726 (Mo. App. 1977) (quoting *State ex rel. Walmar Investment Co. v. Mueller*, 512 S.W.2d at 184(5) ("'it is a well established principle in Missouri that a governmental unit is not estopped by illegal or unauthorized acts of its officers . . . it is recognized that a building permit for construction issued but unauthorized under the ordinance is void and a city is not estopped because its employee issued the license or permit.'"). Moreover, the Board found issue with whether Vianney's reliance on the City Planner's mistake was in good faith or reasonable. Given that credibility of witnesses is strictly a determination of the administrative tribunal, any purported estoppel effect of the City Planner's statements to Vianney would be questionable. *Ocvina v. Bd. of Adjustment of City of St. Louis*, 402 S.W.3d 125, 128 (Mo. Ct. App. 2013) (citing *Baumer*, 247 S.W.3d at 113 ("'The determination as to the credibility of witnesses is strictly for the administrative tribunal, and if the evidence supports either of two contrary conclusions, the administrative determination must prevail.'"). Therefore, the Court holds that the City Planner's mistaken

belief that lights were already on the Sports Field Property and that a variance was not required, does not create a practical difficulty warranting reversal of the denial of a variance.

Second, the Court holds that the topography, layout and size of the school do not create a practical difficulty warranting a variance. *See Rosedale-Skinker Imp. Ass'n v. Bd. of Adjustment of City of St. Louis*, 425 S.W.2d 929, 933–34 (Mo. 1968) ("The topography or physical characteristics of the land itself giving rise to difficulties and undue hardships is one, but not the sole, ground upon which variances in the application of zoning regulations may be granted."). Vianney claims that it provided evidence from its engineer, George Stock, that the Sports Field Property could not feasibly be moved to any other location to accommodate the Maximum Illumination Level at residential property lines due to the nature of the property and existing improvements. Vianney also asserts it provided evidence that the City's Lighting Regulations and the Maximum Illumination Level are unreasonable and excessively restrictive because they mandate no light spill at residential property lines. The Court, however, finds Vianney's framing of this issue to be problematic. Obviously, relocating the Sports Field Property is "not possible" (ECF No. 87 at 6), but it is possible for Vianney to operate its sports program without having the Sports Field Property as a lighted field. Vianney has operated as a private school for more than 50 years and already has a separate lighted field for sporting events. The mere fact that Vianney cannot have a second lighted field does not pose a practical difficulty warranting a variance. *See McMorrow v. Bd. of Adjustment for City of Town & Country*, 765 S.W.2d 700, 702 (Mo. Ct. App. 1989) ("That a structure permitted in the area cannot be built because of the zoning restrictions does not alone establish that a variance must be granted.").

Third, Vianney claims that its financial loss of no less than $235,000, arising from its installation of lights, supports a finding of practical difficulty that warrants granting a variance.

*See McMorrow*, 765 S.W.2d at 701 (citing *Volkman v. City of Kirkwood*, 624 S.W.2d 58 (Mo.App.1981) ("It is clear from the cases that variances are to be granted only for severe interferences with the ability of the landowner to use his land and not for 'mere inconvenience.'"). The Court notes that this is not a case where Vianney is trying to make "some economic use" of its property. *Carlyle-Lowell, Inc. v. Ennis*, 330 S.W.2d 164, 170 (Mo. App. 1959) Rather, Vianney "is able to make a fair economic use of his property within the scope of the existing zoning restrictions, but [is trying] to use his property for a different purpose[.]" *Id.* Vianney has not shown that the Sports Field Property is not usable or financially viable without the variance. Likewise, the mere fact that Vianney has "wasted" $235,000 does not provide a sufficient basis for a variance. *See Antioch Cmty. Church*, 543 S.W.3d at 41 ("Neither can the fact that this money would effectively be wasted if a variance is not granted, itself, justify the variance.").[10] Despite any funds that might have been misspent on the lights, Vianney remains able to function as a private school with serviceable sports fields.

Fourth, Vianney claims that the variance, including its Self-Imposed Restrictions on using the lights, would not create a detriment or substantially change the neighborhood. Vianney's variance requested use of the lights only five months of the year, never on Sundays, never during the summer, and only until 9:00 p.m. Vianney claims that these Self-Imposed Restrictions inure to the benefit of the residents "as compared to Vianney's permitted use under the Site Plan Conditions." (ECF No. 87 at 7). The Court holds that the Board had sufficient evidence of the detriment to the neighbors from Sports Field Property's lights from the testimony of several neighbors. (ECF No. 86 at 17-20). The neighbors testified that the lights unreasonably restricted their use of their property and adversely affected their health. Similarly,

---

[10] Vianney may have a claim against the City for the $235,000 in misspent funds but that issue is not before this Court.

the neighbors testified that the lights changed the character of the neighborhood from a quiet, residential street to one with intrusive lights and loud noise. Accordingly, the Court holds that the Board had competent and substantial evidence that supported the denial of the variance.

Fifth, Vianney claims that it demonstrated that the variance was the minimum variance necessary to accomplish the reasonable use of playing competitive baseball at night. Vianney submitted evidence that the November Light Plan submitted with the variance represented the lowest possible illumination levels for safe play of competitive baseball at night and the Self-Imposed Restrictions reduced Vianney's use of the lights to the minimum necessary to accommodate both its baseball season (March 15 through May 31) and soccer season (September 1 through November 14) and prohibited Vianney's use of the lights during any other time of the year. The Court holds that Vianney has not shown the variance was the minimum needed because Vianney has been able to use its land for over fifty years without any variance. This criteria, therefore, does not present substantial evidence of practical difficulty for Vianney.

Sixth, the Court holds that Vianney has not satisfied all of the other criteria found in Section A-1110.3(3).[11] In addition to demonstrating "practical difficulty" and seeking the minimum variance necessary, Vianney claims that it satisfied all of the other criteria found in

---

[11] Section A-1110.3(3) provides:

In passing upon appeals, the Board of Adjustment is authorized to grant an area or non-use variance only upon a finding that:

(i) There are practical difficulties or unnecessary hardship in the way of carrying out the strict application of the Zoning Code;

(ii) Granting the variance requested would observe the spirit of the Code, secure public safety and welfare and do substantial justice; and

(iii) The deviation from strict application of the Zoning Code that would be authorized by the area or non-use variance would not constitute a change in the district map, impair an adequate supply of light and air to adjacent property, increase congestion in public streets, increase the danger of fire, materially diminish or impair established property values within the surrounding area, and would not in any other respect impair the public health, safety, comfort, morals and welfare of the City of Kirkwood.

Section A-1110.3(3). Vianney was required to show that the variance (1) would observe the spirit of the Code, (2) would secure public safety and welfare, (3) would do substantial justice, (4) would not constitute a change in the district map, (5) would not impair an adequate supply of light and air to adjacent property, (6) would not increase congestion in public streets, (7) would not increase the danger of fire, (8) would not materially diminish or impair established property values within the surrounding areas, and (9) would not in any other respect impair the public health, safety, comfort, morals and welfare of the City. *See* Section A-1110.3(3) of the Kirkwood Zoning Code. Vianney asserted that granting the variance would result in substantial justice for all because the November Light Plan represented the lowest possible illumination level that could be used to play baseball safely at night and included other restrictions that further limited the times when baseball could be played. Vianney also included evidence that lights on the Sports Field Property would not reduce property values. Vianney provided letters from three realtors who stated that the lights would not affect property values. (ECF No. 69 at 13).

The Court notes that the spirit of the City's Zoning Code is set forth in the "Purpose" provision: "to strike a balance of safety and aesthetics by providing lighting regulations that protect drivers and pedestrian from glare and reduce to reasonable limits the trespass of artificial lighting onto neighboring properties and public or private rights-of-way." The City provided testimony that the glare and trespass from Vianney's lights significantly affected drivers, pedestrians, and residents in their homes. Based upon this evidence, the Court holds that Vianney did not meet its burden of demonstrating that the variance would observe the spirit of the Code. In addition, the Court holds that the Board was within its power and authority to find that the variance would not do substantial justice. The Board determined that substantial justice would not be achieved for the residents to allow the elevated lighting levels because of a mistake

by the City Planner. The Court agrees that substantial justice requires examining the impact of the lighting on the residents and not simply the money spent by Vianney. Although it is unfortunate that Vianney was given misinformation, the Court finds that substantial justice requires abiding by the zoning code to protect the residents. Finally, the Court holds that the testimony regarding property values near the Sports Field Property was inconclusive. The conflicting testimony regarding whether property values would be impacted by the lights on the Sports Field Property is not sufficient to overcome the Board's determination that the variance was not supported by the evidence.

Finally, the Court finds that Vianney did not demonstrate that the City's Lighting Regulations were unreasonable and excessively restrictive. Vianney argues that the City's Lighting Regulations and the Maximum Illumination Level are unreasonable and excessively restrictive compared to the lighting regulations of other municipalities because the City's Lighting Regulations effectively mandated no light spill at residential property lines. Vianney maintains that, due to practical difficulty of the excessively restrictive Maximum Illumination Level, it was unable to use the Sports Field Property for competitive sporting events. The Court, however, notes that the Board of Adjustment is not a legislative body and could not find that the Zoning Code was invalid or unenforceable. *See Duffner v. City of St. Peters*, 482 S.W.3d 811, 817 (Mo. Ct. App. 2016) ("A board of adjustment functions in an administrative or quasi-judicial capacity, and its decisions are reviewed pursuant to statutory mandate."); *Rosedale-Skinker Imp. Ass'n v. Bd. of Adjustment of City of St. Louis*, 425 S.W.2d 929, 938 (Mo. 1968) ("A board of adjustment has no legislative powers. It acts administratively or quasi-judicially. Its decisions and rulings cannot have the effect of repealing or amending a law."); *State ex rel. Sims v. Eckhardt*, 322 S.W.2d 903, 906 (Mo. 1959)("We find no authority conferred upon boards of

adjustment to repeal or to hold invalid the provisions of the ordinances they are called upon to administer; and the ruling of the Board of Adjustment at the instant hearing to the effect it would proceed on the basis of the validity of the ordinances was sound."). Thus, Vianney's belief that the City's Zoning Code was overly restrictive could not form the basis for the Board to grant a variance. Further, the City provided evidence that other schools with larger distance between the field and residences had been denied lighting approval. (ECF No. 86 at 25). In fact, Vianney presented no evidence that any school that had a field as close to residential homes as Vianney's Sports Field Property had obtained approval for lights under either the applicable ordinances or through a variance. The Court finds no evidence that Vianney is entitled to a variance due to the City Zoning Code's restrictive or unreasonable Zoning Code.

As a final matter, Vianney asserts that the City and the opposing residents failed to produce competent and substantial evidence to support the Board's denial of a variance and that the denial of the variance was unreasonable, arbitrary and capricious. (ECF No. 69 at 14-17). Vianney noted that the Board unreasonably evaluated (1) whether the Board was required to grant the minimum variance necessary to allow Vianney a reasonable use of the Sports Field Property and (2) whether granting the variance would do substantial justice. Vianney argues that the Board's decision was unreasonable, arbitrary and capricious because it focused on Vianney's ability to use the Sports Field Property during the day, instead of evidence that Vianney was requesting the minimum variance necessary to allow nighttime use of the Sports Field Property. (ECF No. 69 at 16). Further, Vianney claims that the Board evaluated the variance using a zero-sum analysis, rather than comprehending that granting the variance would mean that Vianney could be able to play competitive baseball at night and residents would enjoy tighter restrictions on Vianney's use of the lights under their self-imposed restrictions.

The Court first notes that Vianney, not the City or the residents, had the burden of persuasion that the Board should grant the variance. *See Baumer v. City of Jennings*, 247 S.W.3d 105, 113–14 (Mo. Ct. App. 2008) (citing *Ogawa v. City of Des Peres*, 745 S.W.2d 238, 242 (Mo. Ct. App. 1987)) ("the burden is on the petitioner to demonstrate to the board that the variance requests should be granted"). Further, the Court reiterates its holding that the Board's decision was supported by substantial evidence, which is sufficient for this Court to affirm. *See State ex rel. Sander v. Bd. of Adjustment of the City of Creve Coeur*, 60 S.W.3d 14, 17 (Mo. Ct. App. 2001) ("If substantial competent evidence supports the Board's findings, we may not substitute our discretion for Board's discretion in making its findings, even if different fact-findings are permissible."); *Moto, Inc. v. Bd. of Adjustment of City of St. Louis*, 88 S.W.3d 96, 105 (Mo. Ct. App. 2002) ("If substantial and competent evidence supports the findings of the Board of Adjustment, we will not substitute our discretion, even if different factual findings could have been made in reaching an opposite result."). Therefore, the Court holds that the Board of Adjustment's decision is supported by substantial competent evidence and the Court affirms the Judgment of the Board denying the variance.

## CONCLUSION

Accordingly,

**IT IS HEREBY ORDERED** that Plaintiffs' Motion for Partial Summary Judgment Pursuant to Fed. R.Civ. P. 56(C) (ECF No. 58) is **DENIED**.

**IT IS FURTHER ORDERED** that Defendants' Cross-Motion for Partial Summary Judgment (ECF No. 72) is **GRANTED**.

**IT IS FINALLY ORDERED** that the Court **AFFIRMS** the order and judgment of the

Board of Adjustment denying the variance.

An appropriate Judgment is filed herewith.

Dated this **7th** day of September, 2018.

**RONNIE L. WHITE**
**UNITED STATES DISTRICT JUDGE**