# United States Court of Appeals
*For The Eighth Circuit*

Thomas F. Eagleton U.S. Courthouse
111 South 10th Street, Room 24.329
**St. Louis, Missouri 63102**

**Michael E. Gans**
*Clerk of Court*

VOICE (314) 244-2400
FAX (314) 244-2780
www.ca8.uscourts.gov

December 13, 2019

Mr. Daniel Paul Dalton
DALTON & TOMICH
Suite 270
719 Griswold Street
Detroit, MI  48226

RE:  18-3076  Marianist Province of the U.S., et al v. City of Kirkwood, et al

Dear Counsel:

The court has issued an opinion in this case. Judgment has been entered in accordance with the opinion. The opinion will be released to the public at 10:00 a.m. today. Please hold the opinion in confidence until that time.

Please review Federal Rules of Appellate Procedure and the Eighth Circuit Rules on post-submission procedure to ensure that any contemplated filing is timely and in compliance with the rules. Note particularly that petitions for rehearing and petitions for rehearing en banc <u>must</u> be received in the clerk's office within 14 days of the date of the entry of judgment. Counsel-filed petitions must be filed electronically in CM/ECF. Paper copies are not required. No grace period for mailing is allowed, and the date of the postmark is irrelevant for pro-se-filed petitions. Any petition for rehearing or petition for rehearing en banc which is not received within the 14 day period for filing permitted by FRAP 40 may be denied as untimely.

Michael E. Gans
Clerk of Court

NDW

Enclosure(s)

cc:   Mr. John M. Hessel
      Mr. Ronald E. Jenkins
      Ms. Portia C. Kayser
      Mr. Stephen L. Kling Jr.
      Mr. Gregory J. Linhares
      Mr. Joseph Ernest Martineau
      Ms. Sarah Anne Milunski
      Ms. Sally Sinclair Perez
      Mr. Michael P. Stephens
      Mr. Noel W. Sterett

        District Court/Agency Case Number(s):   4:17-cv-00805-RLW

# United States Court of Appeals
*For The Eighth Circuit*

Thomas F. Eagleton U.S. Courthouse
111 South 10th Street, Room 24.329
**St. Louis, Missouri 63102**

**Michael E. Gans**
*Clerk of Court*

VOICE (314) 244-2400
FAX (314) 244-2780
www.ca8.uscourts.gov

December 13, 2019

West Publishing
Opinions Clerk
610 Opperman Drive
Building D D4-40
Eagan, MN 55123-0000

      RE: 18-3076  Marianist Province of the U.S., et al v. City of Kirkwood, et al

Dear Sirs:

      A published opinion was filed today in the above case.

      Counsel who presented argument on behalf of the appellant and appeared on the brief was Daniel Paul Dalton, of Detroit, MI. The following attorney(s) also appeared on the appellant brief;  Michael P. Stephens, of Saint Louis, MO.,  Ronald E. Jenkins, of Saint Louis, MO.,  Stephen L. Kling, Jr., of Saint Louis, MO.,  Noel W. Sterett, of Belvidere, IL., Sally Sinclair Perez, of Saint Louis, MO.

      Counsel who presented argument on behalf of the appellee and appeared on the brief was John M. Hessel, of Saint Louis, MO. The following attorney(s) also appeared on the appellee brief;  Joseph Ernest Martineau, of Saint Louis, MO.,  Sarah Anne Milunski, of Saint Louis, MO.

      The judge who heard the case in the district court was Honorable Ronnie L. White. The judgment of the district court was entered on September 7, 2018.

      If you have any questions concerning this case, please call this office.

      Michael E. Gans
      Clerk of Court

NDW

Enclosure(s)

cc:  MO Lawyers Weekly

      District Court/Agency Case Number(s):  4:17-cv-00805-RLW

# United States Court of Appeals
### For the Eighth Circuit

_____

No. 18-3076
_____

Marianist Province of the United States; St. John Vianney High School, Inc.

*Plaintiffs - Appellants*

v.

City of Kirkwood; Board of Adjustment of the City of Kirkwood

*Defendants - Appellees*

_____

Appeal from United States District Court
for the Eastern District of Missouri - St. Louis

_____

Submitted: September 26, 2019
Filed: December 13, 2019

_____

Before GRUENDER, BENTON, and SHEPHERD, Circuit Judges.
_____

GRUENDER, Circuit Judge.

     Marianist Province of the United States and St. John Vianney High School, Inc. (collectively, "Vianney") appeal the district court's summary judgment rulings on their Religious Land Use and Institutionalized Persons Act ("RLUIPA") claims, 42 U.S.C. §§ 2000cc(b)(1) and 2000cc(a)(1), Missouri Religious Freedom Restoration Act ("Missouri RFRA") claim, Mo. Rev. Stat. § 1.302.1, and inverse condemnation claim under Missouri's Constitution, Mo. Const. art. I, § 26. We affirm the district court's grant of summary judgment regarding Vianney's RLUIPA

claims and inverse condemnation claim but vacate and remand the grant of summary judgment regarding the Missouri RFRA claim with instructions to dismiss that claim without prejudice.

## I.

Vianney is an all-male Marianist high school that has operated in the City of Kirkwood, Missouri since 1960.  Vianney is a leasehold owner of the school property pursuant to a long-term lease with Marianist Province.  The school's mission statement provides that it is "dedicated to forming young men for spiritual, academic and personal excellence in the Catholic, Marianist tradition."  Vianney states that its students and faculty use all of its approximately thirty-seven-acre property as a forum to evangelize by drawing people to the campus and sharing their faith.  Student athletes and coaches pray before every athletic event and practice.

The school campus includes classroom buildings, a track, an outdoor football and soccer stadium, and a sports field used primarily for baseball.  Vianney's track, football, and soccer facility is equipped with lights and a sound system that were installed before 2012.  The baseball field is bordered by residential homes and has been used to play baseball and other sports without lights for decades.  Vianney's efforts, from 2012 to 2016, to install lights and an updated sound system on this baseball field form the basis of this dispute.

Before 2012, Kirkwood's zoning code did not contain any lighting regulations.  In November 2012, Kirkwood adopted a revised zoning code that included new regulations limiting the maximum level of light a property owner can cast onto nearby residential properties to 0.1 foot-candles. The stated purpose of the 2012 regulations was to "strike a balance of safety and aesthetics by providing lighting regulations that protect drivers and pedestrians from glare and reduce . . . the trespass of artificial lighting onto neighboring properties."  Kirkwood also has sound regulations that prohibit "loud, unnecessary noises" that "unreasonably or

unnecessarily disturb[] . . . the comfort, repose, health, peace, or safety of others in the city."

Vianney began the process of installing lights on its baseball field in late 2014. In 2015, contractors told the school that no lighting configuration could both comply with the lighting regulations and be bright enough to play baseball safely at night. Vianney therefore applied for a variance from the regulations. Kirkwood's city planner told Vianney it did not need a variance, mistakenly thinking the baseball field already had lights. In October 2015, Vianney submitted a site plan for its improvements to the baseball field, which Kirkwood approved. Vianney then installed the lights at a cost in excess of $235,000. In January 2016, Vianney also installed an updated sound system on its baseball field.

After the lights were installed and tested, neighbors complained. Vianney submitted another site plan in 2016, which the city approved subject to several conditions on the use of the lights and sound system. Vianney took issue with the conditions, claiming they deprived it of all meaningful use of its baseball field at night.

Both Vianney and the local public high school, Kirkwood High School ("KHS"), have football stadiums that are used for other sports, such as soccer, and were equipped with lights and sound systems before 2012. Both parties acknowledge that the city "grandfathered in" the lights on both schools' football fields after the lighting regulations were adopted, allowing unrestricted use of the lights and sound systems on those fields. Both high schools also have baseball fields that were not equipped with lights before 2012, and KHS has not installed lights on its baseball field.

In January 2017, Vianney filed a petition against Kirkwood in state court, alleging two claims under RLUIPA, a claim under the Missouri RFRA statute, and inverse condemnation under Missouri's Constitution. Kirkwood removed the case to federal court based on Vianney's RLUIPA claims. *See* 28 U.S.C. § 1331. Both

-3-

Vianney and Kirkwood moved for summary judgment. In September 2018, the district court granted summary judgment to Kirkwood, which Vianney now appeals.

## II.

We review a grant of summary judgment *de novo*. *Ball v. City of Lincoln*, 870 F.3d 722, 726 (8th Cir. 2017). "Summary judgment is proper if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact . . . ." *Torgerson v. City of Rochester*, 643 F.3d 1031, 1042 (8th Cir. 2011) (en banc) (quoting Fed. R. Civ. P. 56). "Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial." *Id.*

### A.

We begin by examining Vianney's substantial burden and equal terms claims under RLUIPA. RLUIPA was enacted by Congress to provide "broad protection" for religious exercise in two areas of government activity. § 2000cc-3(g). Section 2 governs land-use regulation, § 2000cc, and Section 3 governs religious exercise by institutionalized persons, § 2000cc-1. *See Holt v. Hobbs*, 574 U.S. 352, 357 (2015). The land-use provisions include the two causes of action relevant here: a "substantial burden" claim and an "equal terms" claim. §§ 2000cc(a)(1), 2000cc(b)(1). Congress mandated that RLUIPA "shall be construed in favor of a broad protection of religious exercise, to the maximum extent permitted by the terms of this chapter and the Constitution." § 2000cc-3(g). This case is this circuit's first examination of RLUIPA in the land-use context.

First, we address Vianney's claim that Kirkwood's lighting and sound regulations (collectively, "regulations") substantially burden its religious exercise in violation of RLUIPA. RLUIPA's substantial burden subsection provides that no government shall implement a land-use regulation in a manner that "imposes a substantial burden on the religious exercise" of an institution, unless the government

-4-

demonstrates that imposing the burden (1) furthers a compelling governmental interest and (2) is the least restrictive means of furthering that interest. § 2000cc(a)(1).

Vianney asserts that various forms of religious exercise "motivate the school's use" of its baseball field at night. The school emphasizes that athletics is part of the "formation of young men" in the Catholic Marianist tradition and that nighttime sports games allow it to reach out to the community and engage in religious fellowship. RLUIPA broadly defines "religious exercise" to include "any exercise of religion, whether or not compelled by, or central to, a system of religious belief." § 2000cc-5(7)(A). Assuming Vianney's uses of its baseball field at night for forming young men, engaging in religious fellowship, and reaching out to the community constitute religious exercise, we examine its claim that the regulations substantially burden this exercise.

Vianney has not demonstrated that its religious exercise is substantially burdened, rather than merely inconvenienced, by its inability to use its baseball field at night. *See Holt*, 574 U.S. at 361 (stating that RLUIPA claimant bore the burden of proving his religious exercise was substantially burdened). We agree with other circuits that have concluded requiring a religious institution to use feasible alternative locations for religious exercise does not constitute a substantial burden. *See, e.g.*, *San Jose Christian Coll. v. City of Morgan Hill*, 360 F.3d 1024, 1035 (9th Cir. 2004) (finding that, although a Christian college was not permitted to provide religious education at its desired location, this was not a substantial burden because the college did not demonstrate that it was "precluded from using other sites within the city"); *Midrash Sephardi, Inc. v. Town of Surfside*, 366 F.3d 1214, 1227-28 (11th Cir. 2004) (concluding that requiring a synagogue to relocate to a different location was not a substantial burden even though it required elderly congregants to "walk[] a few extra blocks"). In a factually similar situation, the Sixth Circuit found that a Christian school was not substantially burdened by the denial of a special-use permit to relocate its school to a new, more convenient location because the school could still carry out its religious mission at its current location. *Livingston Christian Sch.*

*v. Genoa Charter Twp.*, 858 F.3d 996, 1007-09 (6th Cir. 2017). Like the school in *Livingston*, Vianney also has not shown that its religious exercise will be substantially burdened by being limited to using its baseball field only during daylight hours, as it has for decades. As the district court noted, Vianney has alternative times and locations, such as at its baseball field during the day and its football and soccer facility at night, to carry out its religious mission.

Our determination that the regulations do not constitute a substantial burden is not swayed by Vianney's reliance on *Holt v. Hobbs*. In *Holt*, the Supreme Court recognized that, under RLUIPA, the availability of alternative forms of religious exercise does not excuse a substantial burden on a particular form of exercise. 574 U.S. at 361-62. Specifically, the Court held that a Muslim inmate's religious exercise was substantially burdened when he was forced to shave his half-inch beard in violation of his Muslim faith. *Id.* This burden was not mitigated by the prisoner's ability to observe his religion in other ways, such as following a religious diet and using a prayer rug. *Id.* In contrast to the inmate in *Holt*, Vianney is not being forced to violate its religious beliefs. *See id.* Rather, Kirkwood's regulations require only that Vianney engage in these forms of exercise—community outreach, athletic activities, student prayer, etc.—either during the day or at alternative locations. Because Vianney has not demonstrated that a requirement that it avail itself of these alternatives would substantially burden its religious exercise, its substantial burden claim fails.

Second, Vianney argues that it was not treated on equal terms with KHS in violation of RLUIPA. An equal terms claim under RLUIPA requires the plaintiff to show that a government entity imposed or implemented a land-use regulation on a religious institution that treats the religious institution "on less than equal terms with a nonreligious . . . institution." § 2000cc(b)(1). Vianney brings an "as-applied" equal terms claim, which requires showing a discriminatory application of an otherwise generally applicable regulation. *Primera Iglesia Bautista Hispana of Boca Raton, Inc. v. Broward Cty.*, 450 F.3d 1295, 1310 (11th Cir. 2006).

Other circuits to consider the issue have held that, to meet the standard for an as-applied equal terms challenge, the plaintiff must demonstrate that the government entity has treated a religious institution less favorably than a "similarly situated" secular institution.  *See, e.g.*, *Tree of Life Christian Sch. v. City of Upper Arlington*, 905 F.3d 357, 368 (6th Cir. 2018); *Primera Iglesia*, 450 F.3d at 1311.  Congress did not include "similarly situated" language in the equal terms provision.[1]  And the Eleventh Circuit has noted that while the equal terms provision "has the 'feel' of an equal protection law, it lacks the 'similarly situated' requirement usually found in equal protection analysis."  *Midrash Sephardi, Inc.*, 366 F.3d at 1229.  We need not decide whether to adopt the "similarly situated" requirement at this time because the record demonstrates that Vianney was not treated less favorably than KHS, whether or not KHS is similarly situated.

Vianney argues that Kirkwood treated KHS more favorably because it exempted KHS's football stadium lights from the regulations but refused to exempt Vianney's baseball field lights.[2]  But, as the district court pointed out, KHS's football stadium and Vianney's baseball field were treated differently based not on religious affiliation but on the fact that no lighting regulations existed when KHS's football lights were installed.  The Seventh Circuit has held that a city did not treat a religious organization unequally when it denied the organization a permit to build a church complex despite allowing a public school to build a structure in the same zoning district a few years earlier because the zoning requirements had changed in the intervening years.  *Vision Church v. Village of Long Grove*, 468 F.3d 975, 1002-

---

[1]The statute provides that "[n]o government shall impose or implement a land use regulation in a manner that treats a religious assembly or institution on less than equal terms with a nonreligious assembly or institution."  § 2000cc(b)(1).

[2]Vianney does not assert that it would use its baseball field at night if it could use its sound system without being able to use its lights.  Nor does Vianney claim it is prevented from using its baseball field sound system during the day.  While KHS has a sound system on its baseball field, there is no information in the record regarding when it was installed, what time of day it is used, or how it compares to Vianney's updated 2016 sound system on its baseball field.

03 (7th Cir. 2006); *see Signs for Jesus v. Town of Pembroke,* 230 F. Supp. 3d 49, 67 (D.N.H. 2017) ("The Church is ineligible for grandfathering based on chronology, not religious identity."). Like the public school in *Vision Church*, both Vianney's and KHS's football fields were grandfathered in because both had lighting and sound systems installed before the 2012 lighting regulations were enacted. Kirkwood has not allowed either school to use lights on their baseball fields that exceed the brightness limits set by the regulations because neither Vianney nor KHS had installed lights before 2012. Therefore, the schools have not been treated unequally.[3]

For these reasons, we conclude the district court properly granted summary judgment in favor of Kirkwood regarding Vianney's RLUIPA claims.

**B.**

Vianney also appeals the grant of summary judgment on its Missouri RFRA claim. We review a district court's exercise of supplemental jurisdiction over state claims after federal claims have been resolved for abuse of discretion. *McRaven v. Sanders*, 577 F.3d 974, 984 (8th Cir. 2009); *see Quinn v. Ocwen Fed. Bank FSB*, 470 F.3d 1240, 1249 (8th Cir. 2006) ("It is within the district court's discretion to exercise supplemental jurisdiction after dismissal of the federal claim."). Due to the dearth of case law interpreting the Missouri RFRA, we hold that the district court

---

[3]Vianney also asserts that KHS is allowed to rent out its facilities for a fee while Vianney is not and that KHS is not subject to the same level of site-plan review before it is granted building and other permits by Kirkwood. But there is no evidence that Kirkwood has ever stopped Vianney from renting out its facilities. In addition, Vianney relies on *Corporation of the Catholic Archbishop of Seattle v. City of Seattle*, 28 F. Supp. 3d 1163 (W.D. Wash. 2014), to support its claim that different permitting processes amount to unequal treatment. That case is readily distinguishable because Seattle refused a lighting variance to a religious school that it granted to a public school under the same regulatory scheme. *Id.* at 1168-70. In contrast, Kirkwood has not denied Vianney any variances that it granted to KHS after the 2012 lighting regulations were enacted.

-8-

abused its discretion in deciding this state law claim on the merits after granting summary judgment on Vianney's federal RLUIPA claims.

The Supreme Court has recognized that "in the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered under the pendent jurisdiction doctrine—judicial economy, convenience, fairness, and comity—will point toward declining to exercise jurisdiction over the remaining state-law claims." *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 n.7 (1988). Discretion in the exercise of supplemental jurisdiction is "designed to allow courts to deal with cases involving pendent claims in the manner that most sensibly accommodates a range of concerns and values." *Id.* at 350.

We have held that when federal claims are resolved before trial, the "normal practice is to dismiss pendent claims without prejudice, thus leaving plaintiffs free to pursue their state-law claims in the state courts, if they wish." *Stokes v. Lokken*, 644 F.2d 779, 785 (8th Cir. 1981), *abrogated on other grounds by Pinter v. Dahl*, 486 U.S. 622 (1988); *see Grain Land Coop v. Kar Kim Farms, Inc.*, 199 F.3d 983, 993 (8th Cir. 1999) (noting that usually the balance of factors points toward "declining to exercise jurisdiction" after federal law claims are disposed of by summary judgment). To determine whether the district court abused its discretion by not following the "normal practice," we consider the interests the Supreme Court has articulated—comity, fairness, judicial economy, and convenience. *Carnegie-Mellon Univ.*, 484 U.S. at 350 n.7.

First, we consider the comity interests. Generally, "[n]eedless decisions of state law should be avoided both as a matter of comity and to promote justice between the parties, by procuring for them a surer-footed reading of applicable law." *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726 (1966). Here, comity militates in favor of remand in light of the unusual nature of the Missouri RFRA statute and the lack of case law interpreting it.

The statute provides that a "governmental authority may not restrict . . . free exercise of religion" unless (1) the restriction is generally applicable, and (2) the government demonstrates that "application of the restriction" is "essential to further a compelling governmental interest, and is not unduly restrictive considering the relevant circumstances."  Mo. Rev. Stat. § 1.302.1.  This statute appears more protective of religious exercise than the Federal RFRA statute, 42 U.S.C. § 2000bb-1, and RLUIPA statute, § 2000cc, as well as many other state RFRA laws because it prohibits any "restriction" on religious exercise, not just "substantial" burdens. *See, e.g.*, 775 Ill. Comp. Stat. 35/15 (providing that the government may not "substantially burden" religious exercise); Tex. Civ. Prac. & Rem. Code Ann. § 110.003(a) (providing that the government may not "substantially burden" religious exercise).  In addition, the usual strict-scrutiny standard also appears heightened.  Strict scrutiny requires that a regulation be "narrowly tailored to further compelling governmental interests."  *Sherbrooke Turf, Inc. v. Minn. Dep't of Transp.*, 345 F.3d 964, 969 (8th Cir. 2003).  In contrast, the Missouri RFRA requires that a regulation be "essential to further a compelling governmental interest" and must also be "not unduly restrictive" given the circumstances.  Mo. Rev. Stat. § 1.302.1(2).

Furthermore, there are few cases—and only one case decided by a Missouri state court—that discuss the Missouri RFRA statute.  None is particularly instructive here.  *See Our Lady's Inn v. City of St. Louis*, 349 F. Supp. 3d 805 (E.D. Mo. 2018) (holding that an abortion and contraceptives coverage law that did not exempt employers with religious objections to such coverage violated the Missouri RFRA); *Doe v. Parson*, 567 S.W.3d 625 (Mo. 2019) (holding that plaintiff failed to allege how state law requirements that women wait seventy-two hours when seeking an abortion and be given an opportunity to have an ultrasound violated her religious beliefs).  Due to the different language of the Missouri RFRA statute and the lack of state-court explanations of it, the comity interests strongly favor declining jurisdiction.

Fairness interests also suggest the district court should have declined jurisdiction of this claim.  Litigants "knowingly risk[] dismissal of . . . pendent

-10-

claims when they . . . invoke[] the [c]ourt's discretionary supplemental jurisdiction power." *Annulli v. Panikkar*, 200 F.3d 189, 203 (3d Cir. 1999), *overruled on other grounds by Rotella v. Wood*, 528 U.S. 549 (2000); *see Pitchell v. Callan*, 13 F.3d 545, 549 (2d Cir. 1994) (noting that declining to exercise jurisdiction was not an abuse of discretion because "[w]hen Pitchell brought his state-law claims in federal court, he must have realized that the jurisdiction he invoked was pendent and possibly tentative"). There is no unfairness here because the litigants were on notice of the risk of dismissal of their pendent claims. *See, e.g.*, *Labickas v. Ark. State Univ.*, 78 F.3d 333, 334-35 (8th Cir. 1996) (*per curiam*) (modifying district court's decision to dismiss state law claims so that they were dismissed without prejudice after federal claims were dismissed).

Third, the interests of judicial economy do not seem to weigh strongly in favor of either party. In *Grain Land Coop*, we held that the district court did not abuse its discretion in retaining state law claims because the district court invested "considerable resources . . . in arriving at its summary judgment ruling." 199 F.3d at 988-99. The district court in *Grain Land Coop* ordered special briefing regarding certain issues at the summary judgment stage and received further briefing from *amici*. *Id.* In contrast, the district court in this proceeding spent only one paragraph disposing of Vianney's state RFRA claim and cited no case law to support its findings. Because the district court here does not seem to have invested extraordinary resources in arriving at its summary judgment ruling, there are not strong judicial-economy interests in exercising supplemental jurisdiction over this Missouri RFRA claim.

Lastly, although the interests of convenience may lean toward the district court retaining jurisdiction to avoid further litigation, this consideration does not outweigh the strong comity and fairness interests described above. "[T]he doctrine of pendent jurisdiction . . . is a doctrine of flexibility . . . ." *Carnegie-Mellon Univ.*, 484 U.S. at 350. In order to accommodate the state's strong interest in interpreting its own religious-exercise statute and to guarantee a "surer-footed reading" of the

-11-

statute, we determine that the district court abused its discretion in retaining jurisdiction where no federal claims remained.  *Gibbs*, 383 U.S. at 726.

We therefore vacate and remand the grant of summary judgment of the Missouri RFRA claim to the district court with instructions to dismiss that claim without prejudice.

**C.**

Vianney also appeals the district court's grant of summary judgment in favor of Kirkwood regarding its inverse condemnation claim under Missouri's Constitution.  "We review de novo a district court's grant of summary judgment, as well as its interpretation of state law . . . ."  *Best Buy Stores, L.P. v. Benderson-Wainberg Assocs.*, 668 F.3d 1019, 1026 (8th Cir. 2012).

Since Missouri inverse condemnation law is well established, the comity interests weigh differently than in the Missouri RFRA context.  *See Shahriar v. Smith & Wollensky Rest. Grp.*, 659 F.3d 234, 246-50 (2d Cir. 2011) (noting that a pendent claim did not raise a "novel or complex issue of [s]tate law" in deciding to affirm exercise of jurisdiction).  Therefore, we proceed to review the district court's grant of summary judgment on this claim.

"Missouri law provides for inverse condemnation actions to redress takings allegedly effected by zoning ordinances."  *L.C. Dev. Co. v. Lincoln Cty.*, 996 F. Supp. 886, 888 (E.D. Mo. 1998).  Missouri courts have held that "the valid exercise of the police power is not a taking of private property for public use."  *City of Kansas City v. Tayler*, 689 S.W.2d 645, 646-47 (Mo. Ct. App. 1985).  *But cf. Glenn v. City of Grant City*, 69 S.W.3d 126, 130 (Mo. Ct. App. 2002) ("A regulatory taking occurs when a regulation enacted under the police power . . . goes too far.").  We hold that limits on the use of the lights and sound system on Vianney's baseball field are not a regulatory taking and are a valid exercise of Kirkwood's police powers under Missouri law.

An ordinance is a legitimate exercise of the police power if the "requirements of the ordinance have a substantial and rational relationship to the health, safety, peace, comfort and general welfare of the inhabitants of a municipality." *Schnuck Mkts., Inc. v. City of Bridgeton*, 895 S.W.2d 163, 166 (Mo. Ct. App. 1995). For example, the Missouri Court of Appeals has held that an ordinance prohibiting livestock within 200 feet of a neighboring residence constituted a valid exercise of the police power because it addressed insect and odor problems associated with animals near residences. *Tayler*, 689 S.W.2d at 647; *see also Reagan v. County of St. Louis*, 211 S.W.3d 104 (Mo. Ct. App. 2006) (holding that rezoning of landowner's property from industrial to residential did not amount to a taking because the land was still economically viable and the county did not physically invade the property). Like the appropriate use of the police power in *Tayler* to prevent the trespass of unwanted elements onto private property, Kirkwood's regulations limit trespass of light and sound onto neighboring residences.

In addition, like the regulations here, the ordinance in *Tayler* was not a total proscription on the use of a property but merely a limit on certain uses. *Id.* at 646-47; *see Max v. Barnard-Bolckow Drainage Dist.*, 32 S.W.2d 583, 586 (Mo. 1930) (holding that "the proper exercise of the police power" that does "not directly encroach upon private property" is not a taking, though the "consequence may impair the use thereof"). Kirkwood's regulations similarly do not deprive Vianney of all use of its baseball field but simply limit the light and sound trespass it can impose on neighboring homes.

Vianney asserts that an *unreasonable* exercise of a city's police powers can still constitute damage to private property and, therefore, amount to a taking. There was no such unreasonable exercise here. Just as the ordinance in *Tayler* was considered a reasonable exercise of the police power, Kirkwood's regulations are similarly limited in their effect and focused on preventing intrusions onto neighboring properties. Furthermore, the reasonableness of Kirkwood's lighting restrictions is supported by the fact that neighboring municipalities, such as

-13-

Frontenac and Creve Coeur, have the same or more restrictive lighting limits.[4]  *See, e.g.*, *Echevarrieta v. City of Rancho Palos Verdes*, 103 Cal. Rptr. 2d 165, 171 (Ct. App. 2001) ("[T]raditional land-use regulations such as the imposition of . . . lighting conditions . . . have long been held to be valid exercises of the city's traditional police power, and do not amount to a taking merely because they might incidentally restrict a use . . . ." (internal quotation marks omitted)).  Because Missouri courts have held the reasonable exercise of a city's police power does not constitute a taking and the regulations do not impose unusually restrictive limitations, we find that Vianney's inverse condemnation claim fails.

### III.

For the reasons stated, we affirm summary judgment in favor of Kirkwood on Vianney's RLUIPA claims and inverse condemnation claim and vacate and remand summary judgment of the Missouri RFRA claim with an order to dismiss that claim without prejudice.

_____

---

[4] Frontenac Code of Ordinances § 527.050 ("Illumination from light trespass shall not exceed one-tenth (0.1) foot-candles as measured at the property line for adjacent residential property or one-half (0.5) foot-candles as measured at the property line for adjacent nonresidential property."); City of Creve Coeur Code of Ordinances § 405.680(B)(4) (permitting no light trespass: "Lighting shall not be cast upon an adjacent property or right-of-way nor shall glare be emitted from an illuminant source.").